[No. G046241. Fourth Dist., Div. Three. Feb. 11, 2013.]

ACQUIRE II, LTD., et al., Plaintiffs and Respondents, v.
COLTON REAL ESTATE GROUP et al., Defendants and Appellants.

960

962

## COUNSEL

Waldron & Bragg, Gary A. Waldron, Jacob C. Gonzales and Corbett H. Williams for Defendants and Appellants.

Callahan & Blaine, Daniel J. Callahan, Marc P. Miles, Kimberly A. Knill; Cadden & Fuller, Thomas H. Cadden, John B. Taylor and Michael Campbell for Plaintiffs and Respondents.

## OPINION

**ARONSON, Acting P. J.**—Plaintiffs and respondents[1] invested in six investment funds defendants and appellants[2] created over a 10-year period to purchase and manage six portfolios of commercial real estate. Each fund was separate from the other funds and presented two distinct investment options. Investors could become members or partners in the entity that held title to the entire portfolio or investors could purchase fractional ownership interests in a specific property included in the portfolio without becoming members or partners in the entity. Some Plaintiffs became members in one or more of the investment funds, some became joint owners of one or more individual properties, and some did both.

Defendants filed six motions seeking to compel six of the 12 groups of Plaintiffs to arbitrate their claims relating to these investments. Defendants could not compel all Plaintiffs to arbitrate their claims because Defendants failed to include arbitration provisions in the governing documents for each investment option in each fund. Based on Code of Civil Procedure section

---

[1] There are nearly 250 individual plaintiffs and respondents whom we collectively refer to as Plaintiffs.

[2] Defendants and appellants are The Colton Company, Colton Capital Corporation, Colton Properties, Inc., David A. Colton, Linda Colton, the Colton Family Trust, and Jon W. McClintock. We collectively refer to The Colton Company, Colton Capital Corporation, and Colton Properties, Inc., as the Colton Entities, David A. Colton and Linda Colton as the Coltons, and to all defendants and appellants as Defendants.

1281.2, subdivision (c),[3] the trial court denied all six motions because requiring some Plaintiffs to pursue their claims in an arbitral forum while others pursued their claims in a judicial forum would be inefficient and could lead to conflicting rulings.

Section 1281.2(c) grants a trial court discretion not to enforce written arbitration agreements when (1) a party to the agreement also is a party to pending litigation with a third party who did not agree to arbitration; (2) the pending third party litigation arises out of the same transaction or series of related transactions as the claims subject to arbitration; and (3) the possibility of conflicting rulings on common factual or legal issues exists. A trial court has no discretion to deny arbitration under section 1281.2(c) unless all three of these conditions are satisfied.

Because Defendants failed to request a statement of decision, we must presume the trial court found section 1281.2(c)'s conditions were satisfied on each of Defendants' six motions. We must, however, reverse the trial court's decision because the record lacks substantial evidence to support the implied finding each of section 1281.2(c)'s conditions were satisfied on each motion. We remand the matter for the court to consider each motion under section 1281.2(c). As explained below, some groups of Plaintiffs may satisfy section 1281.2(c)'s conditions, but we cannot make that determination on the current record.

I

FACTS AND PROCEDURAL HISTORY

The Colton Entities are in the business of purchasing and managing commercial real property. They create separate "funds," formed as either limited partnerships or limited liability companies, to solicit investors and take title to each portfolio of commercial office buildings they purchase. One of the Colton Entities serves as the general partner or managing member for each fund and manages the portfolio of properties the fund holds. The Coltons and McClintock are directors, officers, and shareholders of the Colton Entities.

Each fund the Colton Entities created had two types of investors. "Share investors" purchased an interest in the fund itself and became either limited partners or members depending on whether the fund was formed as a limited partnership or a limited liability company. Share investors did not hold title to any of the commercial properties held in the fund, but rather held a passive

---

[3] All statutory references are to the Code of Civil Procedure unless otherwise noted. For convenience, we refer to section 1281.2, subdivision (c), as section 1281.2(c).

ownership interest in the entity that held title. "Tenant in common investors" purchased tenant in common interests in one or more of the commercial properties that made up a fund. Tenant in common investors held an ownership interest in specific properties along with the fund itself, but had no right to participate in the day-to-day management of the properties. Unlike share investors, tenant in common investors did not become limited partners or members in the entity that controlled the fund.

The Colton Entities issued a separate private placement memorandum to solicit investors in each fund. They first solicited share investors for a fund and then later solicited tenant in common investors for specific properties the fund purchased. Share investors executed a subscription agreement and either an operating agreement or a limited partnership agreement that defined the interest they purchased and the Colton Entities' rights and obligations. Tenant in common investors executed a subscription agreement, tenant in common agreement, and property management agreement to define their interests in the property they purchased and the Colton Entities' rights and obligations regarding the property.

At issue in this case are six funds the Colton Entities created: (1) Integrity Fund II, LP; (2) Provider Fund, LP; (3) Advantage Fund, LLC; (4) Discovery Fund, LLC; (5) Freedom Fund, LLC; and (6) Victory Fund, LLC. The Colton Entities created and solicited investors for each of these funds at different times between 1994 and 2004. Each of these funds had both share investors and tenant in common investors, owned separate properties, and were governed by separate contracts with their investors.[4]

Plaintiffs comprise approximately 250 investors in these six funds. Some Plaintiffs are share investors only, some are tenant in common investors only,

---

[4] The following table summarizes the dates on which the Colton Entities first and last solicited or accepted share investors and tenant in common investors for each fund:

| | Share Investor Offering Opening Date | Share Investor Offering Closing Date | First Tenant in Common Investment | Last Tenant in Common Investment |
|---|---|---|---|---|
| Integrity Fund | June 1994 | Nov. 1995 | May 1996 | May 1996 |
| Provider Fund | Dec. 1995 | June 1997 | Aug. 1996 | Mar. 1999 |
| Advantage Fund | Sept. 1996 | Feb. 1998 | June 1998 | Aug. 1998 |
| Discovery Fund | Dec. 1997 | June 1999 | July 1998 | Oct. 2000 |
| Freedom Fund | Feb. 2000 | Jan. 2004 | Oct. 2000 | June 2004 |
| Victory Fund | June 2002 | July 2004 | Dec. 2003 | Oct. 2004 |

and some are both. Similarly, some Plaintiffs invested in just one fund while others invested in multiple funds. The only fund for which there is not at least one Plaintiff who is a share investor and one Plaintiff who is a tenant in common investor is the Integrity Fund, where no Plaintiff was a share investor.

Plaintiffs filed this action in March 2011, alleging a wide variety of claims against Defendants based on their fraudulent conduct in soliciting investors and managing the properties held by the funds. Plaintiffs filed a first amended complaint in August 2011 alleging some combination of the following 12 causes of action regarding each fund for a total of 70 causes of action: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of fiduciary duty; (4) fraudulent concealment; (5) constructive fraud; (6) unfair business practices; (7) accounting; (8) declaratory relief; (9) unjust enrichment; (10) failure to make financial information available in violation of Corporations Code sections 17106 and 15903.04; (11) elder abuse under California law; and (12) elder abuse under Utah law.

Defendants filed six motions to compel different groups of Plaintiffs to arbitrate their claims based on arbitration agreements certain Plaintiffs signed when they purchased their investments. Specifically, Defendants filed separate motions to compel the following groups of Plaintiffs to arbitrate their claims: (1) Advantage Fund share investors; (2) Discovery Fund share investors; (3) Freedom Fund share investors; (4) Freedom Fund tenant in common investors; (5) Victory Fund share investors; and (6) Victory Fund tenant in common investors. Defendants did not seek to compel arbitration with Plaintiffs who are Integrity Fund tenant in common investors, Provider Fund share investors, Provider Fund tenant in common investors, Advantage Fund tenant in common investors, or Discovery Fund tenant in common investors because they did not sign arbitration agreements.

Plaintiffs opposed the motions, arguing the trial court should refuse to enforce the arbitration agreements under section 1281.2(c) because Defendants would remain parties in pending litigation with those investors who did not agree to arbitration, which created the possibility of conflicting rulings on common factual or legal issues. Only the Freedom Fund tenant in common investors opposed the motions on the ground they did not agree to arbitrate their claims. All other groups of Plaintiffs conceded they agreed to arbitration. No group of Plaintiffs argued the arbitration agreements were unenforceable on any ground other than section 1281.2(c).

The trial court denied all six motions: "Pursuant to . . . §1281.2(c), the Court has determined that, although some of the Investors in some of the Funds referenced in the Complaint are likely bound by contractual arbitration agreements, there are inter-related issues between those Investors and claims and Investors and claims, in the same Complaint, that would not be subject to arbitration such that that [*sic*] the splitting of the two, would result in an inappropriate consumption and duplication of financial resources, raise the potential of incomplete remedies, inconsistent rulings and substantial delays for either the arbitration Investors or the Court Investors." In denying Defendants' motions, the trial court did not specifically rule on whether the Freedom Fund tenant in common investors agreed to arbitrate their claims. Defendants timely appealed.[5]

## II

### DISCUSSION

#### A. *Governing Legal Principles Regarding Motions to Compel Arbitration*

■ California law reflects a strong public policy in favor of arbitration as a relatively quick and inexpensive method for resolving disputes. (*Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 443 [140 Cal.Rptr.3d 206].) To further that policy, section 1281.2 requires a trial court to enforce a written arbitration agreement unless one of three limited exceptions applies. (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1404–1405 [117 Cal.Rptr.3d 310] (*Laswell*).) Those statutory exceptions arise where (1) a party waives the right to arbitration; (2) grounds exist for revoking the arbitration agreement; and (3) pending litigation with a third party creates the possibility of conflicting rulings on common factual or legal issues. (§ 1281.2, subds. (a)–(c).)

■ The third party litigation exception applies when (1) "[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party . . ."; (2) the third party action "aris[es] out of the same transaction or series of related transactions"; and (3) "there is a

---

[5] In May 2011, a different group of investors filed a separate action alleging similar claims regarding Defendants' conduct in soliciting investors and managing the properties held in the investment funds. The trial court deemed these two actions related and heard Defendants' motions to compel arbitration in both actions at the same time. The court denied Defendants' motions in the related action based on section 1281.2(c) and its finding the Freedom Fund tenant in common investors did not agree to arbitration. In a separate unpublished opinion, we reverse the trial court's ruling based on section 1281.2(c), but affirm its ruling the Freedom Fund tenant in common investors are not subject to arbitration. (See *Brown v. Colton* (Feb. 11, 2013, G046240) (*Brown*).)

possibility of conflicting rulings on a common issue of law or fact." (§ 1281.2(c).) If all three of these conditions are satisfied, then section 1281.2(c) grants a trial court discretion to either deny or stay arbitration despite an agreement to arbitrate the dispute. (*Laswell, supra,* 189 Cal.App.4th at p. 1405.) Specifically, section 1281.2 identifies four options from which the court may choose: (1) "refuse to enforce the arbitration agreement and . . . order intervention or joinder of all parties in a single action or special proceeding"; (2) "order intervention or joinder as to all or only certain issues"; (3) "order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding"; and (4) "stay arbitration pending the outcome of the court action or special proceeding." (§ 1281.2.)

■ A trial court has no discretion to deny or stay arbitration unless all three of section 1281.2(c)'s conditions are satisfied. (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 709 [111 Cal.Rptr.3d 876] (*Molecular Analytical*) [" 'The court's discretion under section 1281.2[(c)] does not come into play until it is ascertained that the subdivision applies . . . .' "]; see *Laswell, supra,* 189 Cal.App.4th at p. 1405; *Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1288, fn. 6 [63 Cal.Rptr.3d 787] (*Rowe*).)

■ The Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) does not include a provision comparable to Code of Civil Procedure section 1281.2(c) and therefore requires courts to enforce written arbitration agreements even if there is pending litigation involving a third party that may result in conflicting rulings. (*Dean Witter Reynolds Inc. v. Byrd* (1985) 470 U.S. 213, 217 [84 L.Ed.2d 158, 105 S.Ct. 1238].) The FAA applies to agreements to arbitrate disputes arising from a contract involving interstate commerce and it preempts all state laws and rules that conflict with its provisions or its objective of enforcing arbitration agreements. (9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___, ___–___ [179 L.Ed.2d 742, 131 S.Ct. 1740, 1747–1748].) The FAA does not apply to these arbitration agreements because the parties in a choice of law provision agreed to be bound by California's arbitration law. (*Mount Diablo Medical Center v. Health Net of California, Inc.* (2002) 101 Cal.App.4th 711, 722 [124 Cal.Rptr.2d 607] (*Mount Diablo*); see *Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 470–471, 479 [103 L.Ed.2d 488, 109 S.Ct. 1248].) Accordingly, the FAA did not prevent the trial court from relying on section 1281.2(c) to deny Defendants' motions.

Defendants do not dispute section 1281.2(c) could apply to five of their six motions based on the choice of law provisions in their arbitration agreements with Plaintiffs, but they argue the FAA prevented the court from applying section 1281.2(c) to the sixth motion. According to Defendants, the choice of law language in their agreement with the Victory Fund tenant in common investors differed from the choice of law language in their agreements with all other investors. Defendants contend the difference showed they did not intend to incorporate section 1281.2(c) or other California procedural rules regarding arbitration into their agreement with these investors. In support, Defendants rely on *Biomagic, Inc. v. Dutch Brothers Enterprises, LLC* (2010) 729 F.Supp.2d 1140 (*Biomagic*). We do not find the contention persuasive because *Biomagic* is readily distinguishable and the choice of law language in question adequately incorporated California's procedural rules regarding arbitration.

*Biomagic* involved a contract with an arbitration provision and a separate choice of law provision stating the agreement " 'shall be construed, and the legal relations between the parties hereto shall be determined, in accordance with the law of the State of California . . . .' " (*Biomagic, supra,* 729 F.Supp.2d at p. 1143.) The district court concluded that language was insufficient to prevent the FAA from preempting section 1281.2(c) because "[a] general choice of law clause, without more, does not show that the parties intended to incorporate state procedural rules on arbitration" into their agreement. (*Biomagic,* at p. 1146.)

Unlike the agreement in *Biomagic,* Defendants' agreement with the Victory Fund tenant in common investors included both a general choice of law provision and an arbitration provision that included three separate references incorporating California's procedural rules on arbitration. Specifically, the arbitration provision stated: "[J]udgment entered upon the award rendered may be enforced by appropriate judicial action pursuant to the *California Code of Civil Procedure.* . . . By executing this Agreement you are agreeing to have any dispute arising out of this Agreement included in the arbitration of disputes provision decided by neutral arbitration as provided by *California law* . . . . [I]n any event each Tenant shall be entitled to discovery in accordance with *California Code of Civil Procedure Section 1283.05.*" (Italics added.) These repeated references to California's procedural rules on arbitration establish the parties intended section 1281.2(c) to apply in this case; a specific reference to section 1281.2(c) was not required. (*Mount Diablo, supra,* 101 Cal.App.4th at p. 722 [a contract's general choice of law

provision stating Cal. law governs " '[t]he validity, construction, interpretation and *enforcement* of this Agreement' " sufficiently incorporated Cal.'s procedural rules on arbitration and therefore the FAA did not preempt application of § 1281.2(c) (italics added)].)

B. *We Infer All Necessary Findings Supported by the Record Because Defendants Failed to Request a Statement of Decision*

■ Upon a party's timely and proper request, section 632 requires a trial court to issue a statement of decision following "the trial of a question of fact by the court." The statement must explain "the factual and legal basis for [the court's] decision as to each of the principal controverted issues at trial . . . ." (§ 632.) California's statutory scheme regarding contractual arbitration also requires a statement of decision for any ruling denying a motion to compel arbitration if a party requests one. (§ 1291 ["A statement of decision shall be made by the court, if requested pursuant to [s]ection 632, whenever an order or judgment . . . is made that is appealable under this title."]; *Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 687 [133 Cal.Rptr.3d 585] (*Metis*) ["the Legislature intended to require the trial court to issue a statement of decision, upon proper request under section 632, when denying a petition to compel arbitration"].) No statement of decision is required if the parties fail to request one. (*Agri-Systems, Inc. v. Foster Poultry Farms* (2008) 168 Cal.App.4th 1128, 1134 [85 Cal.Rptr.3d 917] (*Agri-Systems*); see *Stermer v. Modiano Constr. Co.* (1975) 44 Cal.App.3d 264, 271 [118 Cal.Rptr. 309].)

A party's failure to request a statement of decision when one is available has two consequences. First, the party waives any objection to the trial court's failure to make all findings necessary to support its decision. Second, the appellate court applies the doctrine of implied findings and presumes the trial court made all necessary findings supported by substantial evidence. (*Agri-Systems, supra,* 168 Cal.App.4th at p. 1135; *Metis, supra,* 200 Cal.App.4th at p. 691, fn. 7.) This doctrine "is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58 [58 Cal.Rptr.3d 225].)

Here, section 1291 permitted Defendants to request a statement of decision on the principal controverted issue: Whether Plaintiffs met section 1281.2(c)'s

three conditions to vest the trial court with discretion to deny Defendants' motions to compel arbitration. Defendants failed to request a statement of decision and therefore waived on appeal any objection based on the trial court's failure to make all findings necessary to support the court's ruling under section 1281.2(c). Accordingly, the only question before us is whether the record supports the implied finding each of section 1281.2(c)'s conditions was satisfied for each motion. (*Fair v. Bakhtiari* (2011) 195 Cal.App.4th 1135, 1148 [125 Cal.Rptr.3d 765]; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 267 [88 Cal.Rptr.3d 186].)

■ Defendants contend the doctrine of implied findings does not apply because a statement of decision generally is not required for a law and motion matter, such as a motion to compel arbitration. Defendants fail to recognize section 1291 expressly authorized a statement of decision, which explains why none of the cases Defendants cite involve section 1291 or any comparable statute. Indeed, the *Metis* decision rejected Defendants' premise that a motion to compel arbitration is an ordinary law and motion matter: "[A] petition [to compel arbitration] is heard *in the manner of* a motion, with factual issues determined upon declarations or, if necessary, live testimony. [Citations.] But a petition to compel arbitration is ' " 'in essence a suit in equity to compel specific performance of a contract.' " ' [Citation.] Unlike most motions, it provides a final determination of certain factual issues . . . and results in an appealable order. Moreover, in ruling on the petition when factual matters are in dispute, the court must weigh credibility and the strength of competing evidence. [Citation.] As such, a hearing on a petition to compel arbitration has attributes of a trial that suggest the need for a statement of decision to enable meaningful appellate review." (*Metis, supra,* 200 Cal.App.4th at p. 688, original italics.)

Although Plaintiffs point out Defendants' failure to request a statement of decision, they nonetheless argue we should review the trial court's ruling under the abuse of discretion standard. But the issue is not whether the trial court abused the discretion granted by section 1281.2(c), but whether the trial court erred in deciding section 1281.2(c) applied. In other words, the issue is whether the trial court erred by impliedly finding each of section 1281.2(c)'s conditions was satisfied.[6]

When section 1281.2(c) applies, "the trial court's discretionary decision as to whether to stay or deny arbitration is subject to review for abuse." (*Laswell, supra,* 189 Cal.App.4th at p. 1406; see *Birl v. Heritage Care, LLC* (2009) 172 Cal.App.4th 1313, 1318 [91 Cal.Rptr.3d 777]; *Rowe, supra,* 153 Cal.App.4th

---

[6] We note Defendants alternatively assert the trial court abused its discretion under section 1281.2(c). Given our conclusion the trial court erred in finding section 1281.2(c) applied on the current record, we need not decide whether the trial court abused its discretion.

at p. 1283.) The trial court's decision whether section 1281.2(c) applies, however, is reviewed under either the substantial evidence standard or the de novo standard. If the court based its decision on a legal determination, then we adopt the de novo standard. (*Laswell*, at p. 1406 [whether a party constitutes a third party under § 1281.2(c) is a legal question subject to de novo review]; *Molecular Analytical, supra,* 186 Cal.App.4th at pp. 708–709.) If the court based its decision on a factual determination, then we adopt the substantial evidence standard of review. (*Laswell*, at p. 1406.) Whether there are conflicting issues arising out of related transactions is a factual determination subject to review under the substantial evidence standard. (*Metis, supra,* 200 Cal.App.4th at p. 691, fn. 7.)

We emphasize the allegations of the parties' pleadings may constitute substantial evidence sufficient to support a trial court's finding that section 1281.2(c) applies. (*Abaya v. Spanish Ranch I, L.P.* (2010) 189 Cal.App.4th 1490, 1498–1499 [118 Cal.Rptr.3d 345] (*Abaya*).) A party relying on section 1281.2(c) to oppose a motion to compel arbitration does not bear an evidentiary burden to establish a likelihood of success or make any other showing regarding the viability of the claims and issues that create the possibility of conflicting rulings. (*Abaya,* at pp. 1498–1499.) An evidentiary burden is unworkable under section 1281.2(c) because the question presented is whether a " 'possibility' " of conflicting rulings exists (*Abaya,* at p. 1499) and a motion to compel arbitration is typically brought before the parties have conducted discovery. Moreover, section 1281.2(c) prohibits a trial court from considering the merits of a party's claims when ruling on a motion to compel arbitration. (§ 1281.2(c); *California Correctional Peace Officers Assn. v. State of California* (2006) 142 Cal.App.4th 198, 205, 211 [47 Cal.Rptr.3d 717].)

Accordingly, the issue before us is whether the allegations of the parties' pleadings or other evidence in the record supports an implied finding that Plaintiffs' claims arise out of a series of related transactions and create the possibility of conflicting rulings on common factual and legal issues.[7] None

---

[7] Although allegations in a pleading may support a trial court's finding section 1281.2(c)'s conditions are satisfied, a party may not make frivolous or unsupported allegations to defeat a motion to compel arbitration. By making allegations in a pleading and later advocating those allegations to the court, an attorney or unrepresented party "certif[ies]" (1) "The claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"; (2) "The allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery"; and (3) "The denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief." (§ 128.7, subd. (b)(2)–(4).) If any of these certifications are false, the attorney or unrepresented party is subject to sanctions. (§ 128.7, subd. (d).)

of the parties dispute Defendants are parties to pending litigation with third parties who did not agree to arbitrate their claims.

### C. *The Record Does Not Support the Implied Finding Section 1281.2(c)'s Conditions Were Satisfied for Each of Defendants' Six Motions*

Defendants filed six separate motions to compel six distinct groups of Plaintiffs to arbitrate their claims. The trial court denied the motions based on section 1281.2(c) without separately addressing each of the three conditions required for that subdivision to apply. Accordingly, to affirm the trial court's ruling we must find substantial evidence in the record to support the implied finding section 1281.2(c)'s three conditions were satisfied for each motion.

For example, to affirm the trial court's decision denying Defendants' motion to compel the Victory Fund share investors to arbitrate their claims, the record must contain substantial evidence to support the findings that (1) Defendants are involved in pending litigation with third parties who did not agree to arbitration (e.g., the Provider Fund share investors, Integrity Fund tenant in common investors, Provider Fund tenant in common investors, Advantage Fund tenant in common investors, or Discovery Fund tenant in common investors);[8] (2) the claims of the Victory Fund share investors and the claims of at least one of these third parties arose out of the same transaction or series of related transactions; and (3) a factual or legal issue common to the claims of the Victory Fund share investors and at least one of the third parties in these groups created the possibility of conflicting rulings.

After reviewing the entire record, we are unable to find substantial evidence to support the findings required to deny any of Defendants' six motions based on section 1281.2(c). Although the record shows some parties to the arbitration agreements (i.e., Defendants) also are defending claims brought by third parties who did not agree to arbitration, the record fails to show that (1) the claims of any group of Plaintiffs who agreed to arbitration and the claims of any group of Plaintiffs who did not agree to arbitration arose out of the same transaction or series of related transactions *and* (2) the claims of those same two groups of Plaintiffs share a common factual or legal issue that creates the possibility of conflicting rulings.

---

[8] The parties disagree on whether the Freedom Fund tenant in common investors also are third parties who did not agree to arbitrate their claims. The trial court did not rule on the issue because it denied all of Defendants' motions based on section 1281.2(c). We need not decide the matter here because neither side raised the issue in its briefs. In the related *Brown* action, we affirm the trial court's finding the Freedom Fund tenant in common investors did not agree to arbitrate their claims.

Plaintiffs' claims regarding their decisions to invest with Defendants arose out of separate transactions because each group of Plaintiffs invested in different funds or properties at different times over a 10-year period. Defendants offered investment opportunities in each fund and property under separate private placement memoranda months or years apart. Even the share investment and tenant in common investment opportunities in the same fund were offered at different times. Each group of Plaintiffs executed separate agreements to define their rights and obligations depending on the fund or property in which they invested.

Plaintiffs' claims regarding Defendants' management of the funds and properties also arose out of separate transactions because Defendants managed different funds and different properties for each group of Plaintiffs. A transaction regarding one property or fund did not affect a separate property held in a separate fund. Separate agreements governed Defendants' management of each fund and each group of properties. Specifically, Defendants managed the properties the funds held for the share investors under separate operating agreements governing each fund and they managed the separate properties each fund owned with the tenant in common investors under separate property management agreements.

For similar reasons, the record does not show a common factual or legal issue that would create the possibility of conflicting rulings between those Plaintiffs who agreed to arbitration and those who did not. Defendants' alleged misconduct related to different funds and properties, occurred at different times, and different contracts applied for each group of Plaintiffs.

Plaintiffs argue section 1281.2(c) applies to all of their claims because Defendants engaged in the same pattern of mismanagement as to all funds and properties. Plaintiffs, however, fail to cite any allegations in their complaint or other evidence in the record to show how Defendants' conduct in managing separate properties held in separate funds arose from the same transaction or a series of related transactions, or how Defendants' conduct in managing separate properties and funds created the possibility of conflicting rulings on common factual or legal issues. Because the record shows each fund owned and managed separate properties governed by separate agreements entered into at different times, Plaintiffs' bare conclusion that Defendants engaged in the same pattern of mismanagement with all properties and funds fails to satisfy section 1281.2(c)'s requirements. Plaintiffs must point to specific allegations in their complaint or other evidence in the record showing how separate transactions regarding separate properties and funds amount to a series of related transactions *and* how the claims regarding those separate transactions present the possibility of conflicting rulings on legal or factual issues common to the claims arising from those separate transactions. (See

*Metis, supra*, 200 Cal.App.4th at pp. 691–692 [§ 1281.2(c) requires a specific issue common to the arbitrable and nonarbitrable claims].) Plaintiffs cannot defeat Defendants' contractual right to arbitration by simply joining Plaintiffs who agreed to arbitration with Plaintiffs who invested in a separate fund or property and did not agree to arbitration.[9]

Plaintiffs' counsel in the trial court displayed a PowerPoint presentation of claims they contend arose out of a series of related transactions and shared a common issue creating the possibility of conflicting rulings. None of Plaintiffs' examples, however, shows all three of section 1281.2(c)'s conditions were satisfied for any single group of Plaintiffs who agreed to arbitrate their claims. At best, Plaintiffs' examples potentially satisfy one or two of section 1281.2(c)'s conditions for a particular group of Plaintiffs. But even when considered together, Plaintiffs' examples failed to show all three of section 1281.2(c)'s conditions were satisfied for any single group of Plaintiffs.[10]

Plaintiffs' first example involves an approximately $7.2 million loan they contend the Freedom Fund made to a partnership that owned "Discovery Fund Property [N]umber 4," an entity not subject to arbitration. According to

---

[9] Plaintiffs' brief focuses on Defendants' conduct in managing the funds and separate properties as the basis for satisfying section 1281.2(c)'s conditions, but they did not argue Defendants' conduct in fraudulently inducing Plaintiffs to invest in the funds and properties satisfied section 1281.2(c)'s conditions. Plaintiffs fail to explain how claims arising out of separate investments made by different people, at different times, and relating to separate properties and funds amount to the same transaction or series of related transactions, or how claims arising out of these separate investments in different funds and properties share common factual or legal issues creating the possibility of conflicting rulings.

At oral argument in the related *Brown* action, the *Brown* plaintiffs argued their fraudulent inducement claims satisfied section 1281.2(c)'s requirements because they presented common factual issues regarding (1) Defendants' concealment of David Colton's fraud judgment for running a similar investment scheme and (2) Defendants' identical misrepresentations during similar investment seminars to the *Brown* plaintiffs induced them to invest with Defendants. Here, Plaintiffs did not make the same argument. Moreover, we did not consider the argument in *Brown* because the *Brown* plaintiffs raised it for the first time at oral argument. (*Palp, Inc. v. Williamsburg National Ins. Co.* (2011) 200 Cal.App.4th 282, 291, fn. 2 [132 Cal.Rptr.3d 592] (*Palp*) [" 'We do not consider arguments that are raised for the first time at oral argument.' "]; *Rosen v. St. Joseph Hospital of Orange County* (2011) 193 Cal.App.4th 453, 464, fn. 4 [122 Cal.Rptr.3d 87] (*Rosen*).)

[10] At oral argument before this court, Plaintiffs' counsel represented that all of the information and examples provided in the PowerPoint presentation could be derived solely from a reading of Plaintiffs' complaint. Counsel is mistaken. The complaint shows which Plaintiffs are share investors and which Plaintiffs are tenant in common investors in each specific fund and property. From that information, it can be determined which Plaintiffs have claims subject to arbitration agreements, which Plaintiffs have claims that are not subject to arbitration agreements, and which Plaintiffs have both types of claims. Contrary to counsel's representation, however, the complaint includes no allegations regarding the specific instances of misconduct portrayed in the PowerPoint slides. Nonetheless, the following discussion addresses the specific examples of mismanagement described in the PowerPoint slides and explains why they do not satisfy all three of section 1281.2(c)'s conditions.

Plaintiffs, Defendants breached the duties they owed the Freedom Fund share investors by making the loan rather than distributing the funds to the investors, and Defendants breached the duties they owed the Discovery Fund tenant in common investors by taking a loan at what Plaintiffs contend was an exorbitantly high interest rate. Although the claims relating to this loan may arise out of the same transaction, they do not present a common factual or legal issue creating the possibility of conflicting rulings.

Making and taking a loan are opposite sides of the same transaction and each involves different risks and obligations. The Freedom Fund's operating agreement governed Defendants' conduct in making the loan while the Discovery Fund's tenant in common agreement and property management agreement governed Defendants' conduct in taking the loan. A ruling that Defendants breached their duties to the Freedom Fund share investors by making the loan and a ruling Defendants did not breach their duties to the Discovery Fund tenant in common investors by taking the loan (or vice versa) are not conflicting rulings on a common factual or legal issue because different rights and duties are involved on each side of the transaction.[11]

Plaintiffs' second example involves a property they refer to as "parcel number 3." Plaintiffs contend this is a single parcel of land that includes two office buildings owned by different funds—one owned by the Victory Fund and one owned by the Freedom Fund—without separately recording those interests on the title. According to Plaintiffs, this parcel shows the Victory and Freedom Funds are "tied at the hip" and have claims arising out of the same transaction or series of related transactions. Plaintiffs, however, identify no factual or legal issue regarding this parcel common to the claims of the Victory Fund and Freedom Fund Plaintiffs that could create conflicting rulings. Indeed, Plaintiffs identify no specific claim relating to this parcel at all.

Plaintiffs' third example involves a group of several Plaintiffs who invested in both the Provider Fund and the Advantage Fund. Plaintiffs contend enforcing the arbitration agreements would require this group of Plaintiffs to litigate their claims regarding the Provider Fund while arbitrating their claims regarding the Advantage Fund. But Plaintiffs identify no specific factual or legal issue common to these two sets of claims that could create the possibility of conflicting rulings. More importantly, these Plaintiffs are not third parties for section 1281.2(c)'s purposes because they agreed to arbitrate some of their claims even though they did not agree to arbitrate all of them.

██ "A trial court does not have discretion to deny arbitration under . . . section [1281.2(c)], absent the presence of a third party . . . ." (*Laswell, supra,*

---

[11] Plaintiffs cite a few other examples of much smaller transfers of money between some of the funds, but those transfers fail to satisfy all of section 1281.2(c)'s conditions for the same reasons.

189 Cal.App.4th at p. 1409.) "The term 'third party' for purposes of section 1281.2[(c)], must be construed to mean a party that is not bound by the arbitration agreement." (*RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1519 [81 Cal.Rptr.3d 892] (*RN Solution*); see *Laswell*, at p. 1407.) "[A] plaintiff's inclusion of a nonarbitrable cause of action in the complaint is not grounds to deny arbitration under the third party exception. In other words, the presence of a nonarbitrable cause of action is not sufficient by itself to invoke the trial court's discretion to deny arbitration under . . . section [1281.2(c)] . . . ." (*Laswell*, at p. 1409; see *RN Solution*, at p. 1521.)

When the dispute between parties to an arbitration agreement includes both arbitrable and nonarbitrable claims, section 1281.2(c) limits the trial court's discretion to delaying arbitration, and only if the court first determines that resolving the nonarbitrable claims in court may make arbitration of the arbitrable claims unnecessary. (*RN Solution, supra*, 165 Cal.App.4th at pp. 1521–1522; see § 1281.2(c) ["If the court determines that there are other issues between the petitioner and the respondent which are not subject to arbitration and which are the subject of a pending action or special proceeding between the petitioner and the respondent and that a determination of such issues may make the arbitration unnecessary, the court may delay its order to arbitrate until the determination of such other issues or until such earlier time as the court specifies."].) Accordingly, the fact a Plaintiff who made multiple investments may have to arbitrate his or her claims regarding one investment and litigate his or her claims regarding another investment is not a sufficient basis for denying arbitration under section 1281.2(c).

Plaintiffs' final example involves a group of Plaintiffs who invested in the Discovery Fund as both share investors and tenant in common investors. According to Plaintiffs, enforcing the arbitration agreements would require these Plaintiffs to both litigate and arbitrate claims regarding Defendants' management of the same properties because the Discovery Fund share investors signed an arbitration agreement but the Discovery Fund tenant in common investors did not. Section 1281.2(c), however, does not allow a trial court to deny arbitration under these circumstances because these Plaintiffs are not third parties for section 1281.2(c)'s purposes. As explained above, when parties who agree to arbitration assert both arbitrable and nonarbitrable claims, section 1281.2(c) does not allow the court to deny arbitration. (*Laswell, supra*, 189 Cal.App.4th at pp. 1407, 1409; *RN Solution, supra*, 165 Cal.App.4th at pp. 1519, 1521.) Instead, the court's discretion is limited to delaying arbitration if first resolving the nonarbitrable claims may make arbitration of the other claims unnecessary.[12] (*RN Solution*, at pp. 1521–1522; see § 1281.2(c).)

---

[12] At oral argument in this court, Plaintiffs referred to additional examples of Defendants' mismanagement of the funds and properties that purportedly establish common issues with the

■ Plaintiffs repeatedly emphasize that compelling some Plaintiffs to arbitrate their claims while allowing others to litigate their claims, and requiring some Plaintiffs to both arbitrate and litigate their claims, would result in "substantial duplication of effort" and "logistical problems" because Plaintiffs would have to present much of the same evidence and call many of the same witnesses in both forums. Judicial economy and preserving resources, however, are not factors considered in deciding whether section 1281.2(c) applies.

A trial court must first determine whether section 1281.2(c) applies. Only then may the court consider judicial economy and other similar factors in deciding how to exercise the discretion section 1281.2(c) confers—for example, whether to deny arbitration and require all parties to litigate their dispute, whether to stay arbitration while the litigation proceeds, or whether to stay the litigation while the arbitration proceeds. (See *Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393 [25 Cal.Rptr.3d 540, 107 P.3d 217]; *Doan v. State Farm General Ins. Co.* (2011) 195 Cal.App.4th 1082, 1100–1101 [125 Cal.Rptr.3d 793].) But a trial court must decide whether section 1281.2(c) applies based only on the three conditions identified in that subdivision. (See *Laswell, supra,* 189 Cal.App.4th at p. 1405; *Molecular Analytical, supra,* 186 Cal.App.4th at p. 709; *Rowe, supra,* 153 Cal.App.4th at p. 1288, fn. 6.) Section 1281.2(c)'s primary purpose is to avoid conflicting rulings, not further judicial economy. (See *Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 488 [17 Cal.Rptr.3d 88] ["the statute was intended primarily to prevent conflicting rulings resulting from arbitration proceedings and other related litigation arising out of the same transaction"].)

Finally, based on *Abaya*, Plaintiffs argue claimants who join together to sue the same defendants on the same claims satisfy section 1281.2(c)'s conditions when some of the claimants agreed to arbitration and others did not. *Abaya* is distinguishable and provides no support for Plaintiffs' position the trial court properly denied all of Defendants' motions.

In *Abaya*, approximately 120 mobilehome park residents sued the park's owners, alleging a variety of claims based on the owners' failure to maintain

---

possibility of conflicting rulings. Examples included some Defendants who allegedly bought interests in the funds and properties in violation of the existing investors' right of first refusal and that David Colton improperly took deferred real estate sales commissions from the funds. Plaintiffs, however, fail to explain which groups of Plaintiffs who signed arbitration agreements share these purported issues with which group of Plaintiffs who did not sign arbitration agreements. More importantly, Plaintiffs did not discuss these examples in their briefs and therefore may not raise them for the first time at oral argument. (*Palp, supra,* 200 Cal.App.4th at p. 291, fn. 2 [" 'We do not consider arguments that are raised for the first time at oral argument.' "]; *Rosen, supra,* 193 Cal.App.4th at p. 464, fn. 4.)

the park's common facilities. Many of the plaintiffs' leases included an arbitration provision, but approximately 20 to 30 did not. Based on section 1281.2(c), the trial court denied the owners' motion to compel the plaintiffs with arbitration agreements to arbitrate their claims. (*Abaya, supra*, 189 Cal.App.4th at pp. 1493–1496.) The Court of Appeal affirmed the trial court's decision that section 1281.2(c)'s conditions were satisfied because whether the park owners adequately maintained the common facilities was an issue common to each plaintiff's claim regardless whether his or her lease included an arbitration provision. Resolving this common issue in different forums could lead to conflicting rulings. (*Abaya*, at p. 1498.)

*Abaya* is distinguishable because the plaintiffs in *Abaya* lived in the same mobilehome park and complained about the owners' management of the same common facilities. Here, Plaintiffs are investors in six separate investment funds and numerous separate properties who complain about Defendants' conduct in inducing separate investments and managing separate properties. *Abaya* would be analogous if this case involved a single investment fund because Plaintiffs would be asserting claims relating to their investment in the same fund and Defendants' management of the same properties.

Although not raised by Plaintiffs, *Abaya* nonetheless points to a basis on which the trial court potentially could deny at least some of Defendants' motions under section 1281.2(c). Specifically, the trial court may base a denial on the possibility of conflicting rulings regarding claims share investors and tenant in common investors in the same fund assert against Defendants for their management of the same piece of property when the share investors agreed to arbitration, but the tenant in common investors did not.

As explained above, each of the six funds at issue had two types of investors: share investors and tenant in common investors. The share investors became partners or members in the entity that took title to the properties the fund purchased and managed, but did not own an interest in any specific property. The tenant in common investors purchased an ownership interest in one or more specific properties the fund owned and held a tenant in common ownership interest in the property or properties with the fund. The tenant in common investors were not partners or members in the entity that is the fund.

If the share investors in a fund assert a claim that Defendants engaged in misconduct relating to their management of a specific property, and the tenant in common investors in the same fund assert that Defendants engaged in misconduct relating to their management of the same property, a common factual or legal issue creating the potential for conflicting rulings exists if the share investors in that fund agreed to arbitration and the tenant in common investors in the same fund did not. This poses a different conflict from the

examples Plaintiffs provided because the Plaintiffs in this situation are investors in the same fund and the tenant in common investors did not agree to arbitrate their claims. An example that would fulfill these criteria is a Discovery Fund share investor and a Discovery Fund tenant in common investor, provided both investors assert Defendants mismanaged the same property and the tenant in common investor did not sign an arbitration agreement with Defendants regarding another fund or property.

■ Plaintiffs do not identify a specific share investor and tenant in common investor who would satisfy these criteria. Plaintiffs' operative pleading at the time the trial court ruled on Defendants' motions to compel arbitration did not identify any specific act of mismanagement regarding any specific property. Plaintiffs' counsel provided the few examples discussed above at the hearing on Defendants' motions, but none of those examples satisfy the foregoing criteria. As a result, the record lacks substantial evidence to support the implied findings necessary to uphold the trial court's ruling based on a potential conflict between claims held by share investors and tenant in common investors in the same fund regarding the same property.[13]

■ Based on the foregoing, we must reverse the trial court's ruling denying all of Defendants' motions to compel arbitration. Both Plaintiffs and the trial court treated all Plaintiffs as one large group and failed to separately examine each of section 1281.2(c)'s conditions for each group of Plaintiffs against whom Defendants brought a motion to compel arbitration. Although the claims of each group of Plaintiffs may generally relate to one another because they all relate to investment funds formed and operated by Defendants, and although it may be more efficient to decide all these claims in one forum, neither of those considerations satisfies section 1281.2(c)'s conditions. California law favors arbitration as a dispute resolution method. Consequently, a trial court may deny a party's contractual right to arbitration only when all of section 1281.2(c)'s conditions are satisfied. California courts have no inherent authority to deny arbitration simply because it would be more efficient to litigate the claims in court.

At oral argument, the parties agreed the appropriate remedy for the trial court's erroneous denial of Defendants' motions was to remand for further consideration under section 1281.2(c). Accordingly, we remand this matter for the trial court to separately consider Defendants' six motions and determine whether the claims of each group of Plaintiffs satisfy section 1281.2(c)'s conditions. (See *Metis, supra,* 200 Cal.App.4th at p. 694 [remanding to further consider whether § 1281.2(c)'s conditions were satisfied

---

[13] We do not suggest the foregoing are the only possible issues that could satisfy section 1281.2(c)'s requirements. Rather, we merely point out these issues as possibilities based on the issues Plaintiffs argued in their brief.

when appellate record failed to identify common issues the trial court relied upon to exercise its discretion under § 1281.2(c)].)

In opposing Defendants' motions, Plaintiffs must provide the trial court with sufficient information regarding their claims to support a finding the claims of Plaintiffs who agreed to arbitration and the claims of Plaintiffs who did not agree to arbitration share a common factual or legal issue that could result in conflicting rulings. As explained above, allegations regarding Defendants' misconduct may satisfy this burden because Plaintiffs have no evidentiary burden to establish their claims at this stage of the proceedings. (*Abaya, supra*, 189 Cal.App.4th at pp. 1498–1499.)

Shortly after denying Defendants' motions to compel arbitration, the trial court sustained Defendants' demurrers to all causes of action with leave to amend, finding Plaintiffs failed to allege sufficient facts to state any cause of action. The court explained it found all of Plaintiffs' claims "nebulous" because they failed to identify any specific wrongdoing by Defendants. Plaintiffs have not yet filed an amended pleading because, after the trial court sustained the demurrers, the entire action was stayed pending the outcome of this appeal. Accordingly, we leave to the trial court's discretion whether Plaintiffs should file their amended pleading before the trial court reconsiders Defendants' motions or whether the court should simply rely on counsel's representations regarding the specific claims Plaintiffs will raise in an amended complaint. Similarly, the trial court also may determine whether the parties should file supplemental briefs addressing the issues raised in this opinion or allow Defendants to file new motions.

If the trial court finds section 1281.2(c)'s conditions are satisfied on any of Defendants' motions, then it must decide how best to exercise the discretion that subdivision provides. The trial court is not limited to merely denying arbitration. The court also may deny arbitration only for certain claims or parties, stay some or all of the claims subject to arbitration until the litigation is completed, or stay some or all of the claims subject to litigation until the arbitration is completed. (§ 1281.2(c).) "What the trial court chooses to do in this situation is a matter of its discretion, guided largely by the extent to which the possibility of inconsistent rulings may be avoided." (*Metis, supra*, 200 Cal.App.4th at pp. 692–693.)

We express no opinion on whether section 1281.2(c)'s conditions may be satisfied for any one of Defendants' motions or how the trial court should exercise its discretion if it finds section 1281.2(c)'s conditions have been met.

## III

### DISPOSITION

The order is reversed and the matter remanded for further proceedings consistent with this opinion. Defendants shall recover their costs on appeal.

Fybel, J., and Ikola, J., concurred.