Filed 2/27/24  Yuhas v. Gizmo Media CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| AMELIA A. YUHAS,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GIZMO MEDIA, LLC et al.,<br><br>    Defendants and Appellants. | B320730<br><br>(Los Angeles County<br>Super. Ct. No.<br>19TRCV00169) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Deirdre H. Hill, Judge.  Affirmed.

Law Offices of Kenneth Gaugh and Kenneth Gaugh for Defendants and Appellants.

Richardson Ober, Kelly G. Richardson and Jonathan R. Davis for Plaintiff and Respondent.

———————————————

Appellants Gizmo Media, LLC (Gizmo Media) and Nayeem Ahmed Khan (Khan) (collectively appellants) appeal from a judgment entered against them and in favor of respondent Amelia A. Yuhas (Yuhas). Appellants' only argument on appeal is that insufficient evidence supports the trial court's finding that Khan is the alter ego of Gizmo Media. Finding no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND[1]

### I. The Sale and Subsequent Payment Dispute

Yuhas and her husband owned a mailbox rental, shipping, and office supply company called Personal Mailbox, LLC, doing business as Lomita Post & Parcel (Personal Mailbox).[2] Khan was a customer at the store, and asked Yuhas "to let him know first" when they were ready to sell the business.

In 2018, Yuhas decided to sell and began negotiating with Khan. Initially, she thought that Khan would buy the business as an individual, listing Khan and his wife as the purchasers on

---

[1] The record on appeal is incomplete, consisting primarily of (1) most of the pleadings and related motions filed by both parties; (2) the purchase agreement and escrow paperwork; and (3) the reporter's transcripts from the bench trial. It does not contain the cross-complaint appellants filed against Yuhas, or any of the numerous exhibits submitted at that trial, including the parties' depositions and multiple e-mail and text messages sent by the parties and various vendors and/or creditors. Where this summary references these documents, it relies on their characterization by the parties and their counsel at trial.

[2] Prior to the sale at issue in this appeal, all rights to the business were assigned solely to Yuhas. Accordingly, Yuhas is the sole plaintiff and respondent in this matter.

the draft purchase agreement. Khan refused to sign the document, telling Yuhas for the first time that "'we're not doing it under our name. We're putting it under the LLC.'" The final purchase agreement designates Personal Mailbox and Gizmo Media as the parties, with Yuhas and Khan as their authorized signers.

The parties agreed on a purchase price of $45,000 for Personal Mailbox.[3] When Khan had trouble securing a small business loan, the parties agreed on a $15,000 down payment. At Khan's suggestion, the remaining $30,000 balance would be paid via 20 postdated checks in the amount of $1,500, to be cashed monthly by Yuhas. When she asked whether these checks would come from Khan or from Gizmo Media, Khan responded "'[w]hichever. Doesn't matter. It's the same effect.'" This left Yuhas with the impression that she "would be able to count on . . . Khan" if any issues arose regarding payment.

In addition to transferring the business and its assets to Gizmo Media, Yuhas agreed to provide 40 hours of training to its new staff. The purchase agreement also specified that "[t]he sale is contingent upon [the] [b]uyer obtaining . . . the assignment . . . [¶] . . . of [Yuhas's] existing lease" for, among other things, an industrial copy machine (the copier).

Yuhas allowed appellants to take over management of Personal Mailbox on July 24, 2018, the day before escrow was set to close on the sale of the business. She later learned that they had not yet paid the $15,000 down payment, delaying the close of escrow.

---

[3]     Khan also bought the building in which Personal Mailbox was located. That sale is not disputed.

3

For nearly four weeks, appellants operated Personal Mailbox without making any attempt to either pay the down payment or share any revenue with Yuhas. For several days, appellants used her employees for free labor. Pursuant to the purchase agreement, Yuhas would send her employees to the store to train appellants' staff, and, finding no one there, the employees would operate the business by themselves all day. Khan refused to pay them for their work, telling them to take their wage complaints to Yuhas. When they did, she paid them a total of $591.50.

In or around this period, Yuhas discovered that United Parcel Service (UPS) mistakenly delivered commission payments in the amount of $848 to appellants, even though the money was earned while Yuhas owned the business. UPS directed Khan to return the check to Yuhas, but he refused. Another dispute arose from appellants' failure to take over the lease on the copier. When the lessor attempted to collect past due payments from Yuhas, she paid a settlement of $850 to close out the lease.

On August 12, 2018, Yuhas told Khan that unless he paid the $15,000 down payment, she would seek legal advice. Appellants tendered the money nine days later. Escrow on the business closed on or around August 22, 2018.

In September 2018, Yuhas deposited the first postdated check without incident. The following month, the second postdated check bounced. Upon being informed that Yuhas was unable to cash the second check, appellants told her that they had stopped payment on all 19 outstanding checks, and threatened to sue for Yuhas's alleged failure to satisfy her obligations under the purchase agreement.

4

## II. The Pleadings

In February 2019, Yuhas sued appellants for breach of contract. According to the operative third amended complaint (TAC), appellants breached the purchase agreement by, inter alia, stopping payment on the postdated checks. Yuhas also alleged that "Khan conducted himself and represented himself as identical to [Gizmo Media], and acted at all times as if he and [Gizmo Media] were one and the same[.]" Appellants entered a general denial.

In August 2020, appellants filed a cross-complaint against Personal Mailbox for breach of contract. They voluntarily dismissed the cross-complaint one year later.

## III. The Trial

In February 2022, the matter proceeded to a bench trial. In addition to numerous exhibits, the parties presented testimony from Yuhas, Khan, and two of Yuhas's former employees.

At several points during the trial, Khan contradicted his prior deposition testimony. He denied that he had insisted on an installment plan via postdated checks "because Gizmo Media had no revenue and no assets"; that "Gizmo Media had no payroll"; that "Gizmo Media . . . is run by family members of [his] who work for free"; and that "the way [he] run[s] [Gizmo Media] is that if there's any money in the business to take out, [he] and [his] brother just take [it] out."

But at his deposition, Khan testified that he had "requested the installment payments because Gizmo Media . . . had no assets or revenue at that point[,]"; that he could not remember the last time the company "had a paid employee on its payroll"; that his family members worked at the business for free; and that "if

5

there were any" profits from the business, he "would be sharing as much as possible" with his brother and father.

Khan also testified that Yuhas agreed to "take care of" the lease on the copier "during the sale process." Despite an e-mail from the leasing agent approving Khan's application to transfer the lease to Gizmo Media, he repeatedly insisted that appellants never agreed to assume the lease on the copier.[4]

## IV. The Judgment and Appeal

On March 18, 2022, the trial court awarded judgment to Yuhas in the amount of $36,251.50, plus prejudgment interest, attorney fees and costs. The court found that Khan was personally liable for the award as Gizmo Media's alter ego, and that appellants "ha[d] not shown that performance under the contract was excused by any material breaches of [Yuhas]."

The parties stipulated to immediate entry of judgment, without a statement of decision. Appellants timely appealed.

## DISCUSSION

On appeal, appellants only contest the trial court's finding that Khan is personally liable as an alter ego of Gizmo Media.

## I. Applicable Law

"Under the alter ego doctrine, . . . when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons . . . actually controlling the corporation, in most instances the equitable owners." (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538 (*Sonora*

---

[4] Yuhas testified that the assignment failed because although appellants "sent the application, . . . [they] did not sign the contract" required to finalize the assignment.

6

*Diamond*).)  "[W]hile the doctrine does not depend on the presence of actual fraud, it is designed to prevent what would be fraud or injustice, if accomplished.  Accordingly, bad faith in one form or another is an underlying consideration and will be found . . . in those cases wherein the trial court was justified in disregarding the corporate entity." (*Associated Vendors, Inc. v. Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 838 (*Associated Vendors*).)

There is "no litmus test to determine when the corporate veil will be pierced; rather the result will depend on the circumstances of each particular case." (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300 (*Mesler*).)  There are "two general requirements:  '(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow.' [Citation.]" (*Ibid.*)

Courts have identified a wide variety of factors that may be considered in applying the alter ego doctrine, including but not limited to:  "[(1)] the holding out by an individual that he is personally liable for the debts of the corporation [citations]; . . . [(2)] sole ownership of all of the stock in a corporation by one individual or the members of a family [citations]; . . . [(3)] the failure to adequately capitalize a corporation; and [(4)] the total absence of corporate assets and undercapitalization [citations] . . . ." (*Associated Vendors*, *supra*, 210 Cal.App.2d at pp. 838–840; see generally *Sonora Diamond*, *supra*, 83 Cal.App.4th at pp. 538–539; *Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 811.)  "No one characteristic governs, but the courts must look at all the

7

circumstances to determine whether the doctrine should be applied."  (*Sonora Diamond*, *supra*, at p. 539.)

"The essence of the alter ego doctrine is that justice be done.  'What the formula comes down to, once shorn of verbiage about control, instrumentality, agency, and corporate entity, is that liability is imposed to reach an equitable result.'"  (*Mesler*, *supra*, 39 Cal.3d at p. 301.)

## II.    Standard of Review

The determination of whether a corporation is an alter ego of an individual is ordinarily a question of fact for the trial court and will not be disturbed if it is supported by substantial evidence.  (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1072; *Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1248.)

"[W]e resolve all conflicts in the relevant evidence 'against . . . appellant[s] and in support of the order.'"  (*Sonora Diamond*, *supra*, 83 Cal.App.4th at p. 535.)  "The test 'is simply whether there is substantial evidence in favor of [Yuhas].  If this "substantial" evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld.  As a general rule, therefore, we will look only at the evidence and reasonable inferences supporting the successful party, and disregard the contrary showing.' [Citations.]"  (*People v. Overstock.Com, Inc.* (2017) 12 Cal.App.5th 1064, 1079.)

## III.    Analysis

As we noted above, appellants have provided an incomplete appellate record.  Yuhas argues they thus forfeited their appeal.  While we agree that "'appellant[s] ha[ve] the burden of affirmatively demonstrating error by providing an adequate

record[]' [citation]" (*Rubio v. CIA Wheel Group* (2021) 63 Cal.App.5th 82, 103), their failure to do so does not merit the extreme penalty of forfeiture. It is enough that, "'[t]o the extent the record is incomplete, we construe it against'" appellants. (*Ibid.*) Regardless, even the partial record before us contains substantial evidence supporting the trial court's finding that Khan is an alter ego of Gizmo Media.

### A.    *Unity of Interest*

The testimony given at trial demonstrates "'such unity of interest and ownership that the separate personalities of [Gizmo Media] and [Khan] no longer exist.'" (*Mesler*, *supra*, 39 Cal.3d at p. 300.) Yuhas testified that when she attempted to clarify who would pay her under the purchase agreement, Khan told her it "'[did]n't matter'" whether installment payments came from him or from Gizmo Media, because "'[w]hichever[]'" entity issued the checks, they would have "'the same effect.'" Khan's words gave Yuhas the impression that she could "count on" him if any issues arose with payment. (*Associated Vendors*, *supra*, 210 Cal.App.2d at p. 838 [unity of interest can be shown by an individual "holding [himself] out . . . [a]s personally liable for the debts of the corporation"]; *Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767–768 [the testimony of a single witness may provide substantial evidence].)

Further, Khan's deposition testimony indicated that when Gizmo Media entered into the purchase agreement, it was undercapitalized. Khan admitted that he asked to pay the majority of the sale price in "installment[s]" via postdated checks "because Gizmo Media . . . had no assets or revenue at that point." In fact, Khan could not remember when the company last

9

"had a paid employee on its payroll[;]" when Gizmo Media took over Personal Mailbox, it staffed the business with Khan's family members and did not pay them for their work. (*Associated Vendors*, *supra*, 210 Cal.App.2d at p. 839 [unity of interest can be demonstrated by "the failure to adequately capitalize a corporation" and "the total absence of corporate assets and undercapitalization"].)

And either in depositions or at trial, Khan admitted that he would distribute any profits Gizmo Media made to himself, his brother, and his father. This suggests that only Khan and his close relatives either own or are entitled to the profits of Gizmo Media. (*Associated Vendors*, *supra*, 210 Cal.App.2d at p. 839 [unity of interest can be shown by "sole ownership of all of the stock in a corporation by one individual or the members of a family"].)

Appellants contend that "there is no evidence in the record that the [trial] [c]ourt considered ANY of the . . . factors" courts have enumerated as relevant to the alter ego inquiry. (See, e.g., *Associated Vendors*, *supra*, 210 Cal.App.2d at pp. 838–840.) To the extent that their argument is based on the trial court's failure to make express findings about these factors, we deem the argument waived, as appellants did not ask for a statement of decision. (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970 (*Acquire II*) [a party who "fail[s] to request a statement of decision when one is available . . . waives any objection to the trial court's failure to make all findings necessary to support its decision"].)

By not requesting a statement of decision, appellants also compel us to "appl[y] the doctrine of implied findings and presume[] the trial court made all necessary findings supported

10

by substantial evidence." (*Acquire II*, *supra*, 213 Cal.App.4th at p. 970.) "The question then becomes whether substantial evidence supports the implied factual findings." (*Fladeboe v. American Isuzu Motors Inc*. (2007) 150 Cal.App.4th 42, 58.) As described above, we find that substantial evidence supports implied factual findings as to multiple alter ego factors. (*Associated Vendors*, *supra*, at p. 840 [generally, where alter ego has been found, "several of the[se] factors . . . were present"].)

### B. *Inequitable Result*

The second requirement, that an inequitable result will follow if Khan is not held liable for Gizmo Media's actions, is also supported by substantial evidence. (See *Mesler*, *supra*, 39 Cal.3d at p. 300.) Khan's deposition testimony casts doubt on whether Gizmo Media has sufficient assets to pay the judgment. However, "[d]ifficulty in enforcing a judgment does not alone satisfy this element. [Citation.] There also must be some conduct amounting to bad faith that makes it inequitable for [Khan] to hide behind the corporate form." (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 418.)

The record contains ample evidence to support a finding that appellants repeatedly acted in bad faith. Yuhas testified that although they took over Personal Mailbox before escrow closed, for one month they neither shared revenue with Yuhas nor made any attempt to proffer the down payment required to close escrow and finalize the sale.

Yuhas and her former employees testified that appellants took advantage of them during that month, using the employees to operate the business on days when Yuhas asked them to train Gizmo Media's staff pursuant to the purchase agreement. Khan

11

compounded the issue by refusing to pay Yuhas's employees for their work, forcing Yuhas to cover their wages.

Appellants refused to forward Yuhas commission money mistakenly paid to appellants by UPS, even after the company directed Khan to do so. And, despite clear language in the purchase agreement obligating them to take over the lease for the copier, appellants failed to finalize the assignment of the lease, allowing past due payments to accrue on Yuhas's account. At trial, Khan repeatedly claimed that he never understood that appellants had a contractual obligation to take over the lease, even though the leasing agent previously informed him that his application to take over the lease had been approved. Appellants' actions imposed additional expenses on Yuhas, as she had to pay the lessor to close out the lease.

Lastly, appellants stopped payment on 19 of the 20 postdated checks they gave to Yuhas and threatened to sue her for allegedly breaching the purchase agreement. Appellants argue that cancelling the checks cannot be considered evidence of bad faith because the decision was "based on [their] good faith dispute with [Yuhas] over [the] contention that [Yuhas] had committed seven (7) material breaches of the" purchase agreement. But appellants did not follow through on their threat to pursue legal action until over a year after Yuhas sued them; even then, they voluntarily dismissed their cross-complaint against Yuhas, and, when defending against her complaint, failed to prove that she committed any material breach of the agreement.[5] This suggests that appellants' reasons for reneging

---

[5]    On appeal, appellants do not challenge the trial court's finding that appellants "ha[d] not shown that performance under the contract was excused by any material breaches of [Yuhas]."

12

on over half the total purchase price were weak at best and specious at worst.[6]

Appellants' conduct raises the inference that they repeatedly failed to comply with the terms of the purchase agreement in bad faith. Such behavior supports the finding that Khan used Gizmo Media to shield himself from any liability that would accrue to the company for breaching its obligations under the purchase agreement. It would be inequitable to allow Khan to profit—at Yuhas's expense—from misusing the corporate form.

Appellants dispute our conclusion, insisting that the record does not contain substantial evidence of bad faith. In addition to the arguments already discussed above, appellants contend that "there [is] no evidence in the record that . . . Gizmo Media . . . was insolvent or judgment proof," emphasizing that "Khan gave several minutes of uncontroverted testimony that Gizmo Media . . . was and is, a profitable, active, business venture."

This argument ignores contradictory evidence that Gizmo Media was undercapitalized when it entered into the purchase agreement, and that at times it was seemingly unable to maintain funds for basic business expenses such as payroll. (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 639 ["Substantial evidence may be contradicted or uncontradicted."]; *Wells Fargo Bank, N.A. v. Weinberg* (2014) 227 Cal.App.4th 1, 8 ["[t]he appellate court has no power to judge the effect or value of the

---

[6] In their opening brief, appellants argue that they paid "31,500 of the $45,000 due" to Yuhas. Their arithmetic does not hold up to modest scrutiny. In the same paragraph, appellants agree that they "stopped payment on . . . 19 postdated $1,500 checks[;]" in other words, they admit to *withholding* $28,500 from Yuhas and only paying her $16,500.

13

evidence, to weigh the evidence, to consider the credibility of witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn from the conflicts"].)

This is especially true where, as here, the only evidence relied on by appellants is the purportedly "uncontroverted" testimony of a witness who contradicted himself numerous times at trial. (*Brenner v. Haley* (1960) 185 Cal.App.2d 183, 186 ["The trier of facts . . . [i]s entitled to disbelieve much or all of [the] testimony" of a witness who "impeached himself on several occasions by contradictory statements"].)

## DISPOSITION

The judgment is affirmed. Yuhas is entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST

We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT

14