Filed 6/20/13  Logan v. Ranken CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| CHRISTOPHER W. LOGAN et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>CHRISTOPHER RANKEN et al.,<br><br>Defendants and Appellants. | A133836<br><br>(San Mateo County<br>Super. Ct. No. CIV 491580) |

Respondents Christopher Logan and Brian Casey purchased a house in Pacifica next door to a house owned by appellants Christopher Ranken and Sylvia Chupity. Logan and Casey lived in their house, but Ranken and Chupity used theirs for short-term vacation rentals.  Logan and Casey sued under nuisance and other tort causes of action alleging that Ranken and Chupity failed to control loud and disruptive parties and other disturbances.  After a three-day trial, the superior court awarded Logan and Casey $25,000 in damages, enjoined Ranken and Chupity from using their house for weekend-only rentals, and required them to include a noise-curfew restriction in their rental agreements.  On appeal, Ranken and Chupity argue that they are not liable for the actions of their short-term renters, the judgment was not supported by substantial evidence, Chupity lacked actual knowledge of the disturbances, the damages were calculated incorrectly, and the court lacked authority to enter portions of its injunction.  We disagree, and affirm.

1

## I.
## FACTS

Ranken and Chupity's house is located at 364 Olympian Way, and throughout this decision we will refer to it by its street address. 364 Olympian Way is a large house that includes five bedrooms, a loft, an office, and three bathrooms. Chupity lived in the house from about 1997 until 2003. At first, only her name was on the title. Ranken and Chupity, however, considered themselves co-owners, and over the years they made a series of changes to the title to reflect the co-ownership. At the time of trial, Ranken had a 50.5 percent interest in the property and Chupity had a 49.5 percent interest.

Logan and Casey purchased their home next to 364 Olympian Way in 2004. Almost immediately after moving in, they found out that "very noisy" weekend parties occurred frequently next door. Many of the parties were hosted by short-term vacation renters, but some of them were hosted by Ranken himself. The parties went late into the morning hours, and the partygoers left debris such as cans, bottles, and cigarette butts in Logan's and Casey's yard. During a party in September 2004, Casey confronted a reveler urinating onto Logan's and Casey's property from a deck at 364 Olympian Way. On different occasions, Logan and Casey endured strobe lights, fireworks, screaming, ambulance calls, and kickball being played at 1:00 a.m. They described some of the parties as "raves," like "Animal House," or "like a casino." Logan, who was employed in Sacramento and stayed there during the work week, sometimes avoided going home to Pacifica on the weekends to escape the commotion at 364 Olympian Way.

Even when there were no parties, weekend renters of 364 Olympian Way were often noisy and disruptive. They were loud when they arrived on Friday and when they left on Sunday, and they would yell between the property's two decks and down to the parking area, which holds up to eight cars. Car alarms would go off regularly.

Other neighbors of 364 Olympian Way also complained about loud parties, renters coming and going disturbing the peace, parking and traffic problems, and trash left in yards and on the street. Some of these neighbors also protested to Ranken and called the police.

In January 2005, Logan and several other neighbors met with Ranken to discuss their concerns about the parties. The meeting had little or no effect, and the parties continued. Logan and Casey continued to complain to Ranken, partygoers, and the police. The number of disturbances lessened after this lawsuit was filed in 2010, but noise problems continued to the time of trial.

## II.
## PROCEDURAL HISTORY

In their complaint, Logan and Casey alleged causes of action against Ranken for negligence, private nuisance, and intentional tort. They sought damages and an injunction to stop Ranken from operating a "weekend house rental/hotel-type business." Chupity was later added as a defendant.

The case was tried over the course of three days. At the end of the trial, the trial court found in favor of Logan and Casey on the first two causes of action. It entered judgment against Ranken in favor of Logan for $12,000 and in favor of Casey for $7,500. And it entered judgment against Chupity in favor of Logan for $3,000 and in favor of Casey for $2,500. Although the court denied the broad injunctive relief that Logan and Casey sought, it enjoined Ranken and Chupity from using 364 Olympian Way for weekend-only rentals and required them to include a noise-curfew provision in their rental agreements. On the third cause of action, the court ruled in favor of Ranken and Chupity finding that Ranken "was not intentionally attempting to cause harm to his neighbors."

No party requested a statement of decision. Ranken and Chupity filed a timely notice of appeal.

III.
DISCUSSION

A. *The Standard of Review.*

The standards under which we are to review the trial court's judgment are well settled and uncontroverted by the parties. We review disputed factual evidence and inferences drawn from the evidence under the substantial evidence standard. Under this standard, our power " '*begins* and *ends* with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact. [Citations.] [¶] When two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court.' [Citation.]" (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th 904, 912.)

On questions of law, we make independent determinations. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.) And we will not disturb a permanent injunction absent a showing of a clear abuse of discretion by the trial court. (*Shapiro v. San Diego City Council* (2002) 96 Cal.App.4th at p. 912.)

In a case in which no statement of decision was requested in the trial court, we apply the doctrine of implied findings. Under this doctrine, we presume that the trial court made all necessary findings to support its decision. (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 970.) This doctrine "is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error." (*Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 58.)

B. *The Negligence and Nuisance Causes of Action.*

Logan and Casey alleged causes of action for both general negligence and private nuisance, with the negligence cause premised on the nuisance. Accordingly, we discuss the legal elements of these claims.

Under Civil Code section 1714, all people, including property owners, are required to use ordinary care to prevent injury to others. "[T]he basic policy of this state set forth by the Legislature in section 1714 of the Civil Code is that everyone is responsible for an injury caused to another by his want of ordinary care or skill in the management of his property." (*Rowland v. Christian* (1968) 69 Cal.2d 108, 118-119.) *Rowland* established that landowners' liability for injuries to people on their property, or for damages occurring off the property due to mismanagement, is governed by negligence principles. (*Pineda v. Ennabe* (1998) 61 Cal.App.4th 1403, 1407.) The essential elements of a negligence claim against a property owner are: (1) the defendant owned the property; (2) the defendant was negligent in using or maintaining the property; and (3) the defendant's negligence was a substantial factor in causing plaintiff's injury. (See Civ. Code, § 1714, subd. (a).)

A property owner's duty to exercise ordinary care is owed to those whom the owner, as a reasonably prudent person would under the same or similar circumstances, should have foreseen would be exposed to a risk of injury. (*Rowland v. Christian, supra,* 69 Cal.2d at. p. 119.) "[T]he liability imposed is for negligence. The question is whether in the management of his property, the possessor of land has acted as a reasonable person under all the circumstances. The likelihood of injury to plaintiff, the probable seriousness of such injury, the burden of reducing or avoiding the risk, the location of the land, and the possessor's degree of control over the risk-creating condition are among the factors to be considered by the trier of fact in evaluating the reasonableness of a defendant's conduct." (*Sprecher v. Adamson Companies* (1981) 30 Cal.3d 358, 372.)

The law of nuisance merges with principles of negligence. A nuisance is anything that interferes with the comfortable enjoyment of life or property. (Civ. Code, § 3479.) It requires a substantial, unreasonable invasion of another's interest in the use and enjoyment of land. (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 938-939.) "Although the central idea of nuisance is the unreasonable invasion of this interest and not the particular conduct subjecting the actor to liability, liability nevertheless depends on some sort of conduct that either directly and unreasonably

5

interferes with [the plaintiff's interest] or creates a condition that does so.  [Citations.]
'The invasion may be intentional and unreasonable.  It may be unintentional but caused
by negligent or reckless conduct; or it may result from an abnormally dangerous activity
for which there is strict liability.  On any of these bases the defendant may be liable.  On
the other hand, the invasion may be intentional but reasonable; or it may be entirely
accidental and not fall within any categories mentioned above.  In these cases there is no
liability.' "  (*Lussier v. San Lorenzo Valley Water Dist.* (1988) 206 Cal.App.3d 92, 100.)
In sum, "where negligent conduct, i.e., conduct that violates a duty of care toward
another, also interferes with another's free use and enjoyment of his property, nuisance
liability arises."  (*Ibid.;* see also *El Escorial Owners' Assn. v. DLC Plastering, Inc.*
(2007) 154 Cal.App.4th 1337, 1349 ["Where negligence and nuisance causes of action
rely on the same facts about lack of due care, the nuisance claim is a negligence claim"].)

"Whether or not a use in itself lawful constitutes a nuisance depends upon a
number of circumstances:  locality and surroundings, the number of people living there,
the prior use, whether it is continual or occasional, and the nature and extent of the
nuisance and of the injury sustained therefrom. . . .  Whether the use is unreasonable or
not is an inference to be drawn from all the facts."  (*Hellman v. La Cumbre Golf &
Country Club* (1992) 6 Cal.App.4th 1224, 1230.)

*C.  Ranken's Lack of Due Care.*

Applying these principles to the facts of this case, we conclude that there was
ample evidence supporting the court's implied conclusion that Ranken acted
unreasonably in failing to control the noise and disturbances at 364 Olympian Way.
Although Ranken professes to understand that our factual review is governed by the
substantial evidence standard of review, his argument simply discusses facts that support
his position and ignores those that do not.  (Cf. *Meyers v. Trendwest Resorts, Inc.* (2009)
178 Cal.App.4th 735, 749 [failure to set forth all material evidence, including evidence
supporting verdict, waives substantial evidence argument].)  The overwhelming evidence
presented at trial was that loud and disruptive activities were regular occurrences at
364 Olympian Way and that Ranken failed to control them.  They occurred at all hours

6

and continued even after Logan and Casey and their neighbors complained to Ranken about them.

A reasonable person in Ranken's position would have understood that these activities at 364 Olympian Way were disruptive to the neighbors and would have done more to prevent or control them. Among other measures, Ranken could have screened his renters more carefully, lengthened rental periods, insisted on more restrictive and effective noise controls in his rental agreements, been more cooperative with the neighbors, and abstained from exacerbating the problem by hosting his own unruly parties at 364 Olympian Way. He argues that Pacifica has no zoning ordinance prohibiting short-term rentals, but this argument misses the point. 364 Olympian Way is located in a residential neighborhood and, as we discuss in more detail below, the neighbors are entitled to the quiet and peaceful enjoyment of their homes regardless of whether Pacifica has a zoning ordinance banning short-term rentals.

A good portion of the parties' briefs is spent discussing exactly when and how much Ranken knew about the disturbances at 364 Olympian Way. But ample evidence supports the trial court's implied finding that Ranken was repeatedly told about the disturbances at 364 Olympian Way but failed to stop them. Logan testified that he notified Ranken 20 to 30 times of problems about loud noise and renters from 2004 to 2007. Logan's best estimate was that he continued contacting Ranken until about December 2008, when he "essentially" gave up talking to Ranken. Casey recalled discussing the vacation rentals with Ranken 10 times, without specifying any particular time frame. One neighbor remembered confronting Ranken on two occasions in 2009 after large, noisy parties. The neighbor told Ranken "this is going on too often." Another neighbor testified that he emailed, telephoned, and spoke to Ranken in person several times in the five years before trial regarding his concerns about using 364 Olympian Way as a vacation rental. As this witness put it, if Ranken claimed no knowledge of problems at the property, he had a "selective memory." Ranken's claims that he cured the problem in 2005 and then received no more complaints are belied by the record.

Published decisions in other cases support the trial court's conclusion that the disturbances amounted to a nuisance and that a reasonable person in Ranken's position would have done more to prevent them.  (See *People v. Mason* (1981) 124 Cal.App.3d 348, 353 [amplified music, foot stomping, and hand clapping]; *Wilson v. Interlake Steel Co.* (1982) 32 Cal.3d 229, 232 [noise from steel fabricating plant adjacent to retiree residences]; *Morton v. Superior Court* (1954) 124 Cal.App.2d 577, 581-582 [noise from rock quarry near residences]; *Wilms v. Hand* (1951) 101 Cal.App.2d 811, 812 [barking dogs in a dog hospital adjacent to a motel].)  The parties and disturbances at 364 Olympian Way are a far cry from the kind of minor daytime noises for which courts have been reluctant to impose liability.  (See *Schild v. Rubin* (1991) 232 Cal.App.3d 755, 764 [playing basketball in residential backyard during daytime].)

In short, both the law and the facts support the trial court's conclusion that Ranken acted unreasonably in failing to control the noise and disturbances at 364 Olympian Way.

*D.  Chupity's Liability.*

Chupity argues that the judgment against her must be reversed because she did not manage the property and was unaware of the disturbances caused by the vacationers.  We disagree.

Chupity held a substantial ownership interest in 364 Olympian Way at all relevant times.  She testified that although she did not profit from the short-term rentals, she knew about them.  She also testified that Ranken never told her about noise complaints at 364 Olympian Way until Logan and Casey filed this lawsuit.  Citing landlord-tenant cases, Chupity argues that an owner must have knowledge or notice of a nuisance in order to be held liable for it.  (See, e.g., *Reinhard v. Lawrence Warehouse Co.* (1940) 41 Cal.App.2d 741, 745-746 [owner of property who had no knowledge of nuisance not liable for injuries to workman hired by lessee]; *City of Los Angeles v. Star Sand etc. Co.* (1932) 124 Cal.App. 196, 197-198 [owner not responsible for nuisance created by lessee without owner's knowledge or notice].)

But even if Chupity lacked actual knowledge of the complaints, she had constructive knowledge of them based on the trial court's implied finding that Ranken

was her agent. Chupity testified that she trusted Ranken to manage the affairs of 364 Olympian Way. She stated that Ranken had her authority to manage the property as he saw fit and that she thought he "was being the property manager." Chupity's testimony established a sufficient basis for the court to conclude that Ranken was her agent for managing the property. (See *Roberts v. Mills* (1922) 56 Cal.App. 556, 562-563 [co-owner who represented plaintiff in leasing property was her agent for purpose of renting the property].)

Information about a property known by an agent is imputed to the owner. "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of, and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." (Civ. Code, § 2332.) It was thus reasonable for the trial court to find that Chupity had failed to exercise ordinary care of 364 Olympian Way because she had constructive knowledge of the noise and disturbance complaints and yet did nothing to control them.

Not only is Ranken's knowledge imputed to Chupity, but so too is his negligence. Negligence of an agent is the negligence of the principal. "[A] principal is responsible to third persons for the negligence of his agent in the transaction of business of the agency . . . ." (Civ. Code, § 2338; see also *Davert v. Larson* (1985) 163 Cal.App.3d 407, 412 [tenants in common who delegate control and management of property to separate entity should not be immunized from liability to third parties for tortious conduct].) Chupity's argument that imputation of liability is only permissible in employment contexts misstates the law.

Thus, Chupity's liability is established under at least two different rationales. First, it is supported by the implied agency relationship between Chupity and Ranken, which leaves Chupity with having constructive knowledge of the noise and disturbances at 364 Olympian Way (upon which her negligence is based). Second, it is supported by the imputation to her of Ranken's negligence.

*D. Landlord Liability for Nuisance Created by Tenants.*

Ranken and Chupity argue that the judgment against them must be reversed because they are not liable for nuisances created by their tenants.  They rely on *Chee v. Amanda Goldt Property Management* (2006) 143 Cal.App.4th 1360, 1373, which declined to impose liability on a landlord for an attack by a tenant's dog when the landlord had no knowledge that the dog was dangerous.  In doing so, they correctly point out that  "[t]he general duty of care owed by a landowner in the management of his or her property is attenuated when the premises are let because the landlord is not in possession, and usually lacks the right to control the tenant and the tenant's use of the property."  (*Id.* at p. 1369.)  But their argument is nonetheless unpersuasive.

To begin with, and as we have discussed, Ranken had actual knowledge, and Chupity had constructive knowledge, of the noise and disturbances at 364 Olympian Way.  Equally important, Ranken and Chupity never established that their short-term renters were tenants with exclusive possession of the property, as opposed to mere licensees or lodgers with a nonpossessory right to use the property.  (See *Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1040 [key characteristic that distinguishes "tenancy from a mere license is the right to exclusive possession as against the whole world, including the landowner"].)  In a true landlord-tenant situation, the landlord's liability is limited because he or she has relinquished possession.  "For landlords, reasonable care ordinarily involves making sure the property is safe at the beginning of the tenancy, and repairing any hazards the landlord learns about later."  (*Stone v. Center Trust Retail Properties, Inc.* (2008) 163 Cal.App.4th 608, 612.)  In contrast, landowners who maintain at least concurrent possession of their property must remain vigilant and take measures to protect third parties from harm.  (See *Salinas v. Martin* (2008) 166 Cal.App.4th 404, 413 [property owner was not an absentee landlord with limited access to the property].)

Precisely how much contractual control of the property Ranken retained over the vacationers is unclear because Ranken failed to produce copies of the short-term rental agreements, claiming that they were on a laptop computer that was stolen in March 2010, shortly after Logan and Casey filed their lawsuit.  But we can infer that he retained at

least some degree of concurrent possession of 364 Olympian Way because the rentals were for weekends and other short periods of time. And, as Logan and Casey point out, Ranken conceded at trial that he "probably" should be paying the local temporary occupancy tax on his rentals, suggesting his renters were more like hotel guests, not tenants with a right of exclusive possession.

Finally, the general rule that landlords are not responsible for the nuisances of tenants who have exclusive control of the property is inapplicable here for the simple reason that the alleged nuisance was not about the conduct of any individual renter. Instead, Logan and Casey alleged that Ranken and Chupity failed to exercise ordinary care over 364 Olympian Way by engaging in a pattern of repeatedly renting it to short-term, disruptive vacationers. The only ones who had the ability and responsibility to control the succession of loud vacationers at 364 Olympian Way were Ranken and Chupity. Thus, they cannot escape liability merely because the noise and disruptions were primarily generated by a series of individual vacationers who rented the property for short periods of time.

*E. Damages Awarded to Logan.*

Ranken and Chupity also contend that the trial court awarded excessive damages. They argue the court awarded Logan "damages as if he had been a full-time resident," and that the damages award "appears" to be based on incidents outside the applicable statute of limitations. These contentions are meritless.

Ranken and Chupity failed to request a statement of decision and, accordingly, there is no way to know with precision how the trial court determined or calculated damages. (*Acquire II, Ltd. v. Colton Real Estate Group, supra*, 213 Cal.App.4th 959. They also failed to move for a new trial on damages, a prerequisite to reviewing a damage award. (*Jamison v. Jamison* (2008) 164 Cal.App.4th 714, 719.) Further still, Ranken and Chupity never properly presented a statute of limitations defense to the trial court. Indeed, Ranken did not even assert the defense in his pleadings. With no citation to authority, Ranken and Chupity claim that the statute of limitations is jurisdictional and cannot be waived. But they are mistaken. The defense may be waived by failing to plead

11

the defense in the answer or as a ground for general demurrer. (*Minton v. Cavaney* (1961) 56 Cal.2d 576, 581.)

The compensation a plaintiff should receive in a nuisance case for personal discomfort and annoyance is a matter for the trial court to determine. (*Griffin v. Northridge* (1948) 67 Cal.App.2d 69, 73 [a homeowner is "entitled to just compensation for annoyance, discomfort and inconvenience caused by a nuisance on the adjoining property"].) Logan suffered anxiety, sleep disturbances, elevated blood pressure, a racing heart, and was normally at his Pacifica home only during the weekends when the parties and disturbances were the most bothersome. Casey experienced some, but not all, of these problems. He suffered sleep disturbances, edginess, and was unable to find peace in his home. In absolute terms, the $15,000 awarded to Logan is modest. In relative terms, while the amount is higher than the $10,000 awarded to Casey, it is rationally supported by the additional injuries that Logan had suffered as found by the trial court.

In short, we find no basis to disturb the award of damages.

*F. Authority to Enjoin Weekend Rentals.*

In their final argument, Ranken and Chupity contend the trial court lacked the authority to impose restrictions on their rental activities through an injunction. Once again, we disagree.

In entering its injunction, the trial court declined to grant Logan and Casey's request to stop Ranken's "weekend house rental/hotel-type business." Instead, the court entered a more narrow injunction preventing Ranken and Chupity from using 364 Olympian Way for weekend-only rentals and requiring them to include a noise-curfew provision in their rental agreements.

The law permits a trial court to enjoin a nuisance: "An action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by a nuisance, as defined in Section 3479 of the Civil Code, and by the judgment in that action the nuisance may be enjoined or abated as well as damages recovered therefor." (Code Civ. Proc., § 731; see also Civ. Code, § 3501 [the remedies against a private nuisance are a civil action or abatement].)

12

Ranken and Chupity argue that the injunction against weekend-only rentals is unauthorized because no Pacifica ordinance bans them. But whether weekend rentals are permissible under local ordinances is irrelevant. Even if short-term weekend rentals are otherwise lawful, Ranken and Chupity negligently failed to sufficiently control the unreasonable noise and disturbances of the partygoers at 364 Olympian Way. (*Venuto v. Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116, 128-129; see also *Williams v. Blue Bird Laundry Co.* (1927) 85 Cal.App. 388, 392 [operation of business under municipal permission does not justify the creation or continuance of a private nuisance].)

We conclude that the trial court acted well within its authority to abate the nuisance by entering a narrow injunction prohibiting weekend-only rentals and requiring a noise-curfew provision in future rental agreements.

IV.
DISPOSITION

The judgment is affirmed.


_____
Humes, J.


We concur:


_____
Ruvolo, P. J.


_____
Rivera, J.


13