Filed 9/12/13  Appel v. Belmont Shore Investors CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| MARIANNE APPEL et al., | B243326 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. NC057161) |
| v. | |
| BELMONT SHORES INVESTORS, LLC, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Patrick T. Madden, Judge.  Affirmed.

Hart, King & Coldren, Robert S. Coldren, Daniel T. Rudderow, C. William Dahlin; Murchison & Cumming, Dan L. Longo, Scott R. Jackman; Lewis Brisbois Bisgaard & Smith, Timothy R. Windham and Mitchell L. Fenton for Defendant and Appellant.

Endeman, Lincoln, Turek & Heater, Henry E. Heater and Linda B. Reich for Plaintiffs and Respondents.

* * * * * *

Defendant and appellant Belmont Shores Investors, LLC operates the mobilehome park that entered into rental agreements with plaintiffs and respondents Marianne Appel, Samuel B. Appel, Mary Catherine Ashburn, May Elizabeth Baker, Ronald James Bishop, Alice Fleming, Richard H. Fleming, Denise Irene Gray, Mark S. Green, Rene Green, Margaret Alice Hess, Skip Hiatt, Lois Hollenbeck, Johnny Lake, Stacy Rae Lake, Laura J. Mathews, Susana M. Montano, Linda Fergie Newbaker, Raymond L. Ouellette, Vito David Pontrelli, Eugene J. Postert, Melinda Rawson, Jeffrey M. Rubenstein, V. Salley Sacks, Roberta Thomas, Mary Turi, Diana Welsh, Richard Welsh, John W. Working and Peter Worona (Homeowners). The rental agreements contained arbitration provisions. After the Homeowners and other mobilehome park residents whose rental agreements did not contain an arbitration provision brought an action against appellant, the trial court denied appellant's motion to compel arbitration.

We affirm. The trial court properly ruled the arbitration provisions were not governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) (FAA). Code of Civil Procedure section 1281.2, subdivision (c)[1] supported its denial of the motion to compel arbitration, as arbitrating only the Homeowners' claims created the possibility of inconsistent rulings on common questions of law and fact. Because we affirm the order on the ground that section 1281.2, subdivision (c) applied to preclude arbitration, we need not address the Homeowners' alternative contentions that the arbitration provisions were unconscionable or void against public policy.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant, incorporated in Delaware, operated Belmont Shores Mobile Estates, a mobilehome park located in Long Beach (Park). Each of the Homeowners entered into a rental agreement with the Park that contained an arbitration clause providing in relevant part: "Any dispute arising out of this agreement or performance thereof shall be resolved by binding arbitration in the City of Long Beach, administered by the American

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

2

Arbitration Association according to its Rules of Practice and Procedure then in effect, and judgment may be entered upon the award by any court having jurisdiction thereof, except claims relating to unlawful detainer or claims relating to forcible detainer, shall not be arbitrated. Disputes relating to the matters so excepted must, in the absence of a further agreement between the parties, be resolved in a court of competent jurisdiction." Each rental agreement provided it was to be governed by the laws of the State of California.

Pursuant to Civil Code section 798.84, appellant was served with a notice of intention to commence action that listed numerous problems with Park conditions. In February 2012, the Homeowners and 21 additional plaintiffs who leased space in the Park but whose rental agreements did not include an arbitration provision filed an action against appellant. In March 2012, they filed the operative first amended complaint, alleging causes of action for nuisance, breach of contract, breach of the covenant of good faith and fair dealing, negligence and negligence per se, breach of the warranty of habitability, breach of the covenant of quiet enjoyment and unfair business practices. They sought damages and declaratory and injunctive relief. They premised their claims on allegations that appellant had substantially failed "to provide and maintain the Park's common areas, facilities, services, and physical improvements in good working order and condition and by reducing services . . . ." They identified specific deficiencies in connection with the Park's sewer, water and drainage systems; electrical and gas systems; streets, walkways and driveways; the pool, barbeque and clubhouse area; lighting and safety; and billing. They further alleged that appellant was aware of the problems, but deliberately chose to ignore them and refused to fix or remedy them. Appellant answered, generally denying the allegations and alleging multiple affirmative defenses.

In April 2012, appellant moved to compel arbitration of the claims brought by the Homeowners and to stay the balance of the action brought by plaintiffs without arbitration agreements. It argued that the arbitration provision in the rental agreements required arbitration of the Homeowners' claims, that the FAA should apply and that there was no possibility of inconsistent rulings if only the Homeowners' claims were

3

arbitrated. In support of their motion, they submitted the declaration of attorney Darrell P. White, who averred that he demanded the Homeowners dismiss the action and initiate arbitration; and the declaration of Park manager Carolann Kniffen, who attached copies of the Homeowners' rental agreements and averred that appellant was organized under Delaware law, that she believed one of the mobilehomes at issue was manufactured by an entity incorporated in the State of Delaware and that she "believe[d] that there are many other types of manufactured homes inside the park, which may have originally been manufactured out of the state of California."

The Homeowners opposed the motion. They argued the FAA did not apply, arbitration created the possibility of conflicting rulings, and the arbitration provisions were both unconscionable and void against public policy. They filed their own declarations in support of their opposition. Though the declarations varied, the gist of each was that the Homeowners were presented with a rental agreement and told that they had to sign it as a condition of moving into the Park; they felt under economic pressure to sign the rental agreement because they had already purchased a mobilehome; they were not told they could refuse any of the rental agreement's terms; they did not know they were giving up their right to a jury trial; and they were unaware they would be responsible for arbitration costs. Many Homeowners also declared they did not have the financial ability to pay arbitration costs. In addition, they submitted the declaration of an attorney who provided generalized estimates of the cost of arbitrating the Homeowners' claims.

Appellant replied and filed evidentiary objections to portions of the Homeowners' declarations. At a June 26, 2012 hearing, the trial court denied appellant's motion, ruling that the FAA did not apply. It also overruled appellant's evidentiary objections. This appeal followed.

## DISCUSSION

Appellant contends that the Homeowners should have been compelled to arbitrate because the FAA governed the enforcement of the arbitration provisions, and, even if California law governed, there was no possibility of conflicting rulings under

4

section 1281.2, subdivision (c) if an arbitration went forward.  Appellant also defends the arbitration provisions against the claim they are unconscionable or violate public policy. We find no basis to disturb the trial court's order.

## I.  Governing Legal Principles Concerning Petitions to Compel Arbitration and the Standard of Review.

"California law reflects a strong public policy in favor of arbitration as a relatively quick and inexpensive method for resolving disputes.  [Citation.]  To further that policy, section 1281.2 requires a trial court to enforce a written arbitration agreement unless one of three limited exceptions applies.  [Citation.]  Those statutory exceptions arise where (1) a party waives the right to arbitration; (2) grounds exist for revoking the arbitration agreement; and (3) pending litigation with a third party creates the possibility of conflicting rulings on common factual or legal issues.  (§ 1281.2, subds. (a)-(c).)" (*Acquire II, Ltd. v. Colton Real Estate Group* (2013) 213 Cal.App.4th 959, 967 (*Acquire II*).)

The *Acquire II* court described the statutory elements necessary to satisfy the final exception:  "The third party litigation exception applies when (1) '[a] party to the arbitration agreement is also a party to a pending court action or special proceeding with a third party . . .'; (2) the third party action 'aris[es] out of the same transaction or series of related transactions'; and (3) 'there is a possibility of conflicting rulings on a common issue of law or fact.'  (§ 1281.2(c).)  If all three of these conditions are satisfied, then section 1281.2(c) grants a trial court discretion to either deny or stay arbitration despite an agreement to arbitrate the dispute.  [Citation.]  Specifically, section 1281.2 identifies four options from which the court may choose:  (1) 'refuse to enforce the arbitration agreement and . . . order intervention or joinder of all parties in a single action or special proceeding'; (2) 'order intervention or joinder as to all or only certain issues'; (3) 'order arbitration among the parties who have agreed to arbitration and stay the pending court action or special proceeding pending the outcome of the arbitration proceeding'; and (4) 'stay arbitration pending the outcome of the court action or special proceeding.' (§ 1281.2.)"  (*Acquire II, supra,* 213 Cal.App.4th at pp. 967–968.)

5

Accordingly, "[s]ection 1281.2(c) addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement," and it gives "the court discretion not to enforce the arbitration agreement under such circumstances—in order to avoid potential inconsistency in outcome as well as duplication of effort . . . ." (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393.) The Legislature included section 1281.2(c) as part of the statutory scheme governing arbitration "so that common issues of fact and law will be resolved consistently, and only once." (*Mount Diablo Medical Center v. Health Net of California, Inc.* (2002) 101 Cal.App.4th 711, 727.)

"[T]he basic purpose of the Federal Arbitration Act is to overcome courts' refusals to enforce agreements to arbitrate. [Citation.]" (*Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265, 270.) Consistent with this purpose, the FAA "does not include a provision comparable to Code of Civil Procedure section 1281.2(c) and therefore requires courts to enforce written arbitration agreements even if there is pending litigation involving a third party that may result in conflicting rulings. [Citation.] The FAA applies to agreements to arbitrate disputes arising from a contract involving interstate commerce and it preempts all state laws and rules that conflict with its provisions or its objective of enforcing arbitration agreements. [Citation.]" (*Acquire II, supra*, 213 Cal.App.4th at p. 968.)

In connection with our review of the trial court's determination that the FAA did not apply, "'[w]e will uphold the trial court's resolution of disputed facts if supported by substantial evidence. [Citation.] Where, however, there is no disputed extrinsic evidence considered by the trial court, we will review its arbitrability decision de novo.' [Citation.]" (*Giuliano v. Inland Empire Personnel, Inc.* (2007) 149 Cal.App.4th 1276, 1284.) Our threshold review of the trial court's interpretation of section 1281.2, subdivision (c) is de novo. (*Rowe v. Exline* (2007) 153 Cal.App.4th 1276, 1283.) Once section 1281.2, subdivision (c) has been found to apply, "'the trial court's discretionary decision as to whether to stay or deny arbitration is subject to review for abuse.' [Citations.]" (*Acquire II, supra,* 213 Cal.App.4th at pp. 971–972; accord, *Birl v.*

6

*Heritage Care, LLC* (2009) 172 Cal.App.4th 1313, 1318.)  Under this deferential standard of review, "the trial court's order will not be disturbed on appeal unless it exceeds the bounds of reason."  (*Henry v. Alcove Investment, Inc.* (1991) 233 Cal.App.3d 94, 101.)

Our review is also guided by the fact that appellant did not request a statement of decision pursuant to section 1291, nor was the hearing on the motion to compel arbitration reported.  Appellant's failure to request a statement of decision means that it has "waived on appeal any objection based on the trial court's failure to make all findings necessary to support the court's ruling under section 1281.2(c).  Accordingly, the only question before us is whether the record supports the implied finding each of section 1281.2(c)'s conditions was satisfied for [the] motion.  [Citations.]"  (*Acquire II, supra*, 213 Cal.App.4th at p. 971; accord, *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 267 ["In the absence of a statement of decision, a reviewing court looks only to the judgment to determine error"].)

## II.  Substantial Evidence Supported the Trial Court's Determination That the FAA Did Not Apply.

The FAA applies to arbitration agreements in contracts involving interstate commerce.  (9 U.S.C. § 2; *Allied-Bruce Terminix Cos. v. Dobson, supra*, 513 U.S. at p. 281; *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1351; *Acquire II, supra*, 213 Cal.App.4th at p. 968.)  Courts ascertain whether an agreement involves interstate commerce for the purpose of the FAA by applying "the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.  [Citation.]"  . . . [I]t is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce'—that is, 'within the flow of interstate commerce,' [citation]."  (*Citizens Bank v. Alafabco, Inc.* (2003) 539 U.S. 52, 56.)  Appellant "had the burden to demonstrate FAA coverage by declarations and other evidence.  [Citations.]"  (*Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1207.)

7

Here, appellant sought to meet its burden to show the rental agreements involved interstate commerce by offering evidence of three items: Appellant's incorporation in Delaware, Kniffen's belief that one of the mobilehomes involved in the action was manufactured by a builder that was incorporated in Delaware and Kniffen's belief that other mobilehomes "may have originally been manufactured out of the State of California."[2] Appellant failed to meet its burden.

Preliminarily, we observe that Kniffen's two statements about her belief that one mobilehome was manufactured outside of California and that others "may" have been manufactured outside the state did not rise to the level of substantial evidence. To be substantial, supporting evidence must be "of ponderable legal significance, . . . reasonable, credible and of solid value." (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.) "[I]t is ""'substantial' proof of the essentials which the law requires."' [Citations.]" (*Ibid.*) "Inferences may constitute substantial evidence, but they must be the product of logic and reason. Speculation or conjecture alone is not substantial evidence. [Citation.]" (*Buckley v. California Coastal Com.* (1998) 68 Cal.App.4th 178, 192; accord, *People v. Waidla* (2000) 22 Cal.4th 690, 735 ["'speculation is not evidence, less still substantial evidence'"]; cf. *McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 396 ["personal beliefs or concerns are not evidence"]; *Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1498 ["An averment on information and belief is inadmissible at trial"].)

Appellant's remaining evidence—that it was incorporated in the State of Delaware—did not tend to show that its rental agreements with California residents for property located in California involved transactions in the flow of interstate commerce. We are guided by *Hoover v. American Income Life Ins. Co., supra,* 206 Cal.App.4th

---

**2**     At oral argument, appellant asserted that evidence the Park used utilities and the inference that the mobilehomes were transported to the Park on an interstate freeway were also indicative of interstate commerce. Beyond their lack of support in the record, these assertions do not assist appellant. We decline to find that a party's typical utility use and/or freeway travel bear on whether a transaction affects interstate commerce.

1193. There, the court held the FAA did not apply to an agreement between Hoover, a California resident who sold life insurance policies in California as an agent on behalf of Texas-based AIL, as "there was no evidence in the record establishing that the relationship between Hoover and AIL had a specific effect or 'bear[ing] on interstate commerce in a substantial way.' [Citation.]" (*Id.* at p. 1207.)[3]

Here, similarly, appellant offered no evidence to show that the rental agreements involving California residents leasing space in a mobilehome park in California had any significant bearing or effect on interstate commerce. The cases on which appellant relies involved evidence of activity beyond an entity's state of incorporation. (See *Citizens Bank v. Alafabco, Inc., supra*, 539 U.S. at p. 57 [holding debt restructuring agreements involved interstate commerce where evidence showed the debtor engaged in substantial interstate business using the bank loans and the restructured debt was secured by all of the debtor's business assets, including "goods assembled from out-of-state parts and raw materials," and given the general policy that commercial lending activity is subject to Commerce Clause regulation]; *Allied-Bruce Terminix Cos. v. Dobson, supra*, 513 U.S. at pp. 281–282 [holding transaction involved interstate commerce because the company was multistate and the materials used to carry out the terms of the contract came from outside of the state].) Because appellant offered insufficient evidence to show the rental agreements involved interstate commerce, we find no basis to disturb the trial court's ruling that the FAA did not apply.

---

[3] Though there is a dearth of California authority on the point, out of state cases have concluded that the FAA does not apply where the only evidence of interstate commerce involves a party's state of incorporation or residency. (See, e.g., *Cecala v. Moore* (N.D. Ill. 1997) 982 F.Supp. 609, 612 [finding FAA inapplicable to a contract for the sale of a home to an Illinois resident in Illinois by an out of state seller where there was "no evidence that transaction incident to the sale took place outside Illinois"]; *Biomat, Inc. v. Samson* (Kan.App. 2000) 28 Kan.App.2d 242, 246 [declining to find that diversity, alone, is enough to bring the FAA into play]; *A.J. Taft Coal Co. v. Randolph* (Ala. 1992) 602 So.2d 395, 397 [finding evidence that lease agreement for surface mining to be conducted on property in Alabama, some parties to the agreement were not Alabama residents and lease payments were to be mailed through the United States mail constituted an inadequate nexus with interstate commerce for application of the FAA].)

**III.    The Trial Court Properly Denied the Motion to Compel Arbitration.**

Below, the Homeowners argued that the trial court should deny the motion to compel arbitration because there were third parties not subject to arbitration on claims arising out of the same transaction or related transactions and there existed the possibility of conflicting rulings on common issues of law or fact if arbitration were to proceed.[4] (§ 1281.2, subd. (c).)  Again, because appellant failed to request a statement of decision, "the issue is whether the trial court erred by impliedly finding each of section 1281.2(c)'s conditions was satisfied." (*Acquire II, supra*, 213 Cal.App.4th at p. 971.)  A party relying on section 1281.2, subdivision (c) to oppose a motion to compel arbitration does not bear an evidentiary burden to establish a likelihood of success or make any other showing regarding the viability of the claims and issues that create the possibility of conflicting rulings.  (*Abaya v. Spanish Ranch I, L.P.* (2010) 189 Cal.App.4th 1490, 1498–1499 (*Abaya*).)  Instead, the allegations of the pleadings may constitute substantial evidence sufficient to support a trial court's finding that section 1281.2, subdivision (c) applies. (*Abaya, supra,* at pp. 1498–1499.)

As appellant does not dispute that it is a party to pending litigation with third parties who did not agree to arbitrate their claims—that is, the plaintiffs without arbitration provisions in their rental agreements—the question before us is whether the complaint's allegations were sufficient to support an implied finding that the Homeowners' claims arose out of a series of related transactions and created the

---

[4]    On appeal, the Homeowners request that we take judicial notice of an unpublished opinion in *Joan Hawley-McGrath et al. v. General Trailer Park Associates* (filed November 10, 2004, B173970), portions of the underlying record in that matter, and a portion of the underlying record in *Mastick v. TD Ameritrade, Inc.* (2012) 209 Cal.App.4th 1258.  While a reviewing court may take judicial notice of the records of any court of this state (Evid. Code, §§ 452, subd. (d), 459, subd. (a)), judicial notice is confined to those matters which are relevant to the issue at hand (*Gbur v. Cohen* (1979) 93 Cal.App.3d 296, 301).  "Relevant evidence" means evidence having any tendency in reason to prove or disprove any disputed fact of consequence to the determination of the action.  (Evid. Code, § 210.)  Because we conclude the materials sought to be judicially noticed are not relevant to our determination on appeal, we deny the request.

possibility of conflicting rulings on common factual and legal issues. *Abaya, supra,* 189 Cal.App.4th 1490 requires that we answer that question affirmatively.

In *Abaya*, 120 current and former mobilehome park residents sued the park, alleging that the owner failed to maintain common areas and facilities. (*Abaya, supra,* 189 Cal.App.4th at p. 1494.) Many, but not all, of the residents signed lease agreements containing a provision for alternative dispute resolution. (*Ibid*.) The appellate court affirmed an order denying the owner's motion to compel arbitration. Because *Abaya* involved facts indistinguishable from those here, we quote the court's reasoning at length: "The trial court here properly concluded that the action involved common issues of law and fact. Defendant Park owners were parties to arbitration agreements with 89 to 100 residents that covered claims relating to defendants' alleged failure to maintain the Park's common facilities, as well as parties to a lawsuit by 20 to 31 residents that alleged the same claims. All plaintiff residents alleged that various common facilities at the Park were inadequately maintained, in violation of statutory provisions and the common law. In support of their multiple legal theories for nuisance, breach of the warranty of habitability and related claims, plaintiffs alleged in their complaint that defendants failed to 'maintain the Park's common areas, facilities, services, and physical improvements in good working order and condition,' including the sewer system, water system, drainage system, electrical system, and street system, and that they refused to fix these problems. Whether the common areas, facilities, services and improvements were adequately maintained, and whether any maintenance deficiencies violated any of the alleged statutory or common law rights of plaintiffs, presented common questions of law and fact. Plaintiffs' requested declaratory and injunctive relief likewise presented common questions. Resolution of those common questions in different forums presented the possibility of inconsistent rulings on those issues. For example, in an arbitration the arbitrator might determine that defendants did not fail to maintain the common facilities and deny relief to plaintiffs, while a trial court might reach a contrary finding and permit recovery by those plaintiffs not subject to an arbitration agreement. Because plaintiffs in court might recover for their alleged injuries based on the same conditions of the Park for

11

which arbitrating plaintiffs might be denied relief—or vice versa—the possibility of conflicting rulings on issues of law or fact plainly existed." (*Abaya, supra*, at p. 1498.)

Though appellant omitted any reference to *Abaya* in its opening brief, in its reply brief it contends that *Acquire II, supra,* 213 Cal.App.4th 959 called that decision into question. Not so. The *Acquire II* court distinguished *Abaya* on the facts, stating: "*Abaya* is distinguishable because the plaintiffs in *Abaya* lived in the same mobilehome park and complained about the owners' management of the same common facilities. Here, Plaintiffs are investors in six separate investment funds and numerous separate properties who complain about Defendants' conduct in inducing separate investments and managing separate properties. *Abaya* would be analogous if this case involved a single investment fund because Plaintiffs would be asserting claims relating to their investment in the same fund and Defendants' management of the same properties." (*Acquire II, supra,* at p. 979.)

*Abaya* is analogous here. The record established that 30 of the 51 plaintiffs were parties to a rental agreement with appellant that contained an arbitration provision. Both the Homeowners and the other 21 plaintiffs alleged in a single action that appellant had failed to maintain Park facilities. In support of their allegations, they described specific problems with the Park's common areas, systems and improvements, and alleged that appellant had refused to repair any of the problems. (See *Abaya, supra*, 189 Cal.App.4th at p. 1498.) For example, the complaint alleged among the deficiencies that "[s]treets have potholes, cracks and depressions; [w]alkways are cracked and uneven; [u]nreasonable delays by Park management and/or its agents to repair streets, walkways and driveways; [p]oor street and walkway conditions, along with improper lighting conditions, has made it difficult for residents to walk around the Park . . . ."

Whether the Park's systems, common areas and improvements were adequately maintained, or whether the Park's failure to provide adequate maintenance violated any statutory or regulatory provisions involved common questions of law and fact. (*Abaya, supra*, 189 Cal.App.4th at p. 1498; see also *Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 545–546 [in action brought by mobilehome park residents

12

alleging that owners failed to maintain common areas and facilities, court affirmed denial of owners' motion to compel reference to private trial referee of some residents' claims on the ground there was a possibility of conflicting rulings on a common issue of law or fact].) Moreover, the "[r]esolution of those common questions in different forums presented the possibility of inconsistent rulings on those issues." (*Abaya, supra,* at p. 1498.) For example, an arbitrator might find that appellant inadequately maintained streets and walkways and grant relief to the Homeowners, while a trial court might reach a contrary finding and deny recovery to the plaintiffs not subject to an arbitration agreement. Additionally, dual actions present the possibility that an arbitrator and a trial judge could make differing credibility assessments, leading to inconsistent factual determinations. Further, an arbitrator and a trial judge could make inconsistent legal determinations, as "contractual arbitration generally frees the arbitrator from making a decision strictly in accordance with the law [citation]." (*Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 345.)

The circumstances here present precisely the problem the Legislature intended to address through the enactment of section 1281.2, subdivision (c): "'In actions involving multiple parties with related claims, where some claimants agree to arbitrate their differences and others remain outside the agreement, *arbitration is unworkable.* Where a party to an arbitration agreement is also party to a pending court action or special proceeding, with such a third party, *there may be a possibility of conflicting rulings on issues of law or fact.*' (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1628 (1977-1978 Reg. Sess.) p. 2, italics added.) Thus, the statute was intended primarily to prevent conflicting rulings resulting from arbitration proceedings and other related litigation arising out of the same transaction." (*Whaley v. Sony Computer Entertainment America, Inc.* (2004) 121 Cal.App.4th 479, 488.) Because the Homeowners in an arbitration might recover for their alleged injuries based on the same conditions of the Park for which litigating plaintiffs might be denied relief—or vice versa—the possibility of conflicting rulings on issues of law or fact existed. (*Abaya, supra*, 189 Cal.App.4th at p. 1498.)

13

Beyond *Abaya*, multiple cases have reached the same conclusion, holding that a trial court has broad authority to deny a petition to compel arbitration when granting the petition would create the possibility of conflicting rulings on common issues of law and fact. (See, e.g., *Best Interiors, Inc. v. Millie & Severson, Inc.* (2008) 161 Cal.App.4th 1320, 1329–1330 [general contractor's petition to compel arbitration of claims brought by subcontractor denied on the basis that building inspectors were parties to the litigation but could not be joined in the arbitration, and possibly inconsistent rulings could arise on the issue of whether the inspectors were agents of the project owner]; *Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469, 475–476 [healthcare provider's petition to compel arbitration of claims brought by decedent's survivors denied on the basis that certain claims were not subject to arbitration and therefore "[i]f plaintiffs' claims proceed in different forums, there is a potential for inconsistent rulings on a common fact, such as whether any violations of the Patients' Bill of Rights caused the decedent's injuries or her death"]; *Whaley v. Sony Computer Entertainment America, Inc., supra,* 121 Cal.App.4th at p. 486 [employer's petition to compel arbitration of claims brought by terminated employees denied on the basis that conflicting factual determinations could occur in an action involving the employer and another terminated employee arising out of the same transaction]; *C. V. Starr & Co. v. Boston Reinsurance Corp.* (1987) 190 Cal.App.3d 1637, 1641–1642 [insurers' petition to compel arbitration of claims brought by underwriter denied on the basis that there was a risk of conflicting rulings on issue of allocation among numerous insurers who were not subject to arbitration].)

In view of the overwhelming authority demonstrating that the Homeowners' allegations created the possibility of inconsistent rulings on common questions of law and fact, "[t]he trial court properly concluded that the action involved common issues of law and fact. 'The existence of this possibility of conflicting rulings on a common issue of fact is sufficient grounds . . .' to deny a motion to compel pursuant to section 1281.2, subdivision (c). [Citation.]" (*Abaya, supra,* 189 Cal.Appp.4th at p. 1499.) With respect to the trial court's exercise of discretion to deny the motion to compel arbitration instead

14

of selecting one of the other options permitted by section 1281.2, we are again guided by *Abaya*. "Of course, the trial court could have addressed the possibility of conflicting rulings by other means, for example, by ordering arbitration among defendants and the many plaintiffs who agreed to arbitration and staying the court action pending the outcome of the arbitration proceeding. (§ 1281.2.) The court did not do so here, and [appellant has] not argued on appeal that the court abused its discretion in choosing among the alternative means of addressing the situation. [Appellant's] argument is that the court erred in finding that there was any possibility of conflicting rulings on common issues of law or fact. We reject that argument." (*Abaya, supra,* at p. 1499.)

## DISPOSITION

The order denying the motion to compel arbitration is affirmed.  The Homeowners are entitled to their costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J. *

FERNS

We concur:

_____, P. J.

BOREN

_____, J.

CHAVEZ

---

\*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16